US DISTRICT COURT

EASTERN DISTRICT OF PA

Susan Lloyd

55 Stanley Ave

Landisville, PA 17538

    Plaintiff

V

John Allen

505 Historic Drive

Strasburg PA 17579


And


Lancaster General Hospital

555 North Duke Street

Lancaster, PA 17603


And


MRI Group LLP

941 Wheatland Avenue

Ste 100

Lancaster PA 17603

**LLOYDS COMPLAINT FOR FRAUD AND/OR FRAUDULENT CONCEALMENT, SEX AND DISABILITY DISCRIMINATION, VIOLATIONS OF FALSE CLAIMS ACT, DEFAMATION PER SE, RES IPSA LOQUITOR, NEGLIGENCE AND GROSS NEGLIGENCE,  VICARIOUS LIABILITY AND DIRECT LIABILITY AND OSTENSIBLE AGENCY,  CORPORATE NEGLIGENCE ,  INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, RICO VIOLATIONS PARTIES**

1. Plaintiff Susan Lloyd is a resident of Lancaster County PA at all  relevant times

2. Defendant John Allen is a physician at 505 Historic Drive Strasburg PA with LGH at all relevant times

3. Defendant Lancaster General Hospital,LGH,  is advertised as a not for profit hospital located in Lancaster PA at all relevant times.

4. Defendant MRI group is a business who does MRI at Lancaster General Hospital at all relevant times.

**VENUE AND JURISDICTION**

5. Under 42 Pa CS 931, this court has jurisdiction and venue is proper as  the actions  which compose this case took place in Lancaster County PA and Eastern District of PA and Lloyds damages exceed over 100,000.00 jointly and severally

6. Plaintiff claims Federal jurisdiction pursuant to Article III 2 which extends the Jurisdiction to cases arising under the US Constitution.

7. US Constitution and Federal laws were violated and the amount in controversy exceeds 75,000.00.

8. Lloyds damages also exceed 75,000.00.

9. This court has subject matter jurisdiction over this action pursuant to 28 USC 1331 and 1343(a)(4)

10. The court has personal jurisdiction over Defendants because they conduct and continue to conduct a substantial and significant amount of business in Pennsylvania.

11. Plaintiffs claims occurred within the Eastern district of Pennsylvania.

12. Venue is proper in Pennsylvania pursuant to 28USC1391(b)(1) as this court has personal jurisdiction over the Defendants.

13. Lloyd has standing to bring this matter as she has suffered an injury in fact that is traceable to the Defendants and that is likely to be redressed with a favorable judicial decision.

FACTS

14. On October 9 2023, Lloyd began to see John Allen as her Primary Care physician

15.  From the beginning John Allen began to refer Lloyd to multiple specialists and run multiple tests on Lloyd for financial gain for himself and his employer Lancaster General Health LGH

16.  On or about July 1 2024, Lloyd presented to John Allen for new onset posterior exertional headaches, vision changes, increased eye pressure and other new neurological symptoms

17.  John Allen ordered an MRI of the brain for Lloyd

18.  On or about July 31 2024, Lloyd had the MRI done at MRI group at Lancaster General Hospital

19.  The report states the MRI was normal

20.  After LGH and MRI group read this MRI as normal, John Allen began to treat Lloyd differently and actual hatred showing numerous anger outbursts towards Lloyd at her appointments

21.  John Allen also began to state Lloyd has mental illness which is causing Lloyd to go to doctors and have tests run for no reason when John Allen actually referred  Lloyd to all of these doctors and all of these tests and became angry if Lloyd disagreed about going to the appointments

22.  Lloyd has no history of mental illness and at no time did John Allen ever refer Lloyd to a therapist

23.  On or about March 5 2025, Lloyd asked John Allen to remove this defamation from Lloyds chart

24.  John Allens response was "with all due respect, I have said what I have said"

25.  As a result of John Allens defamation of Lloyd, Lloyd terminated John Allen as her primary care physician in March 2025.

26.  On or about March 24, 2025, Lloyd was finally able to see Dr Roya Vakili, (who John Allen referred Lloyd to), her neurologist at Dartmouth in New Hampshire

27.  On or about March 24 2025, Lloyd was told by Dr Vakili that the July 31 2024 MRI done at LGH and mRI group showed not only that Lloyd had an old brain stem stroke but a recent new medulla brain stem stroke

28.  After seeing Dr Vakili, on or about March 25 2025, Lloyd wrote certified letter to LGH asking them to amend Lloyds MRI report to reflect these 2 strokes

29.  LGH refused

30.  After seeing Dr Vakili, on or about March 25 2025, Lloyd wrote certified letter to John Allen asking him to remove his untrue statements about Lloyd from her chart

31.  John Allen refused

32.  Knowing that the MRi was misread, neither John Allen or LGH would ever apologize to Lloyd or do anything else in regards to helping Lloyd in the matter

33.  Knowing that the MRI was misread and that Lloyd has no mental illness, John Allen refused to remove his defamation of Lloyd

34.  On or about September 27 2025, Lloyd sent LGH a demand letter to settle this matter.

35.  Lloyd copied John allen on the demand letter

36.  As a direct result of this demand letter, LGH and John Allen began to treat Lloyd as if she was a criminal and sent Lloyd a letter that a domestic violence victim would send out to their abuser

37.  LLoyd asserts she has done no criminal activity to John Allen or LGH

38.  LGH even terminated Lloyd from John allen in this no trespass letter

39.  However, as stated above, Lloyd already terminated John Allen in March 2025 due to his defamation of Lloyd

40.  Furthermore, John Allen and LGH violated HIPPA when they discussed Lloyds private and confidential medical information amongst themselves and with LGH security without Lloyds permission

41.  Furthermore, John Allen was not allowed to discuss Lloyds
     private medical information with anyone as Lloyd has not
     been his patient for at least 6 months

42.  Furthermore, LGH was not allowed to discuss Lloyds
     private medical information with anyone else

43.  On or about November 1 2025, Lloyd received another
     letter from LGH denying all monetary compensation to Lloyd
     and once again refusal to amend Lloyds medical records as
     required under HIPPA

44.  On or about November 1 2025, LGH threatened Lloyd with
     legal action if she ever contacts them outside of a lawsuit
     and left Lloyd with no choice but to pursue this litigation
     as it was clear LGH was NOT going to compensate Lloyd for
     damages LGH and John Allen caused Lloyd

45.  LLoyd also sent a demand letter to the MRI group.  They
     never responded

46.  As a result of all of the above, Lloyd has suffered
     deficits from a new stroke and severe emotional distress
     along with other injuries directly caused by LGH and John
     Allen and MRI group.


COUNT I- FRAUD AND/OR FRAUDULENT CONCEALMENT AGAINST LANCASTER
GENERAL HOSPITAL

Lloyd incorporates 1-46 above and includes but not limited to the following:

47.  From October 1 2023 to present, Lancaster General Hospital on their website, states they "ensure patients receive the highest quality care where and when they need it most".

48.  This statement is false as LGH ignored a new stroke in LLoyd despite Lloyd showing classic stroke symptoms and made Lloyd wait for 12 hours in the ER waiting room with little to no care several times despite Lloyd having chest pains, abnormal lung sounds, shortness of breath and other serious symptoms.

49.  From October 1 2023 to present,  Lancaster General Hospital states on their website "whether you need emergency services, routine checkups, or long term care, our teams work seamless across a variety of settings to ensure you receive the highest quality care"

50.  This statement is false as LGH ignored a new stroke in LLoyd despite Lloyd showing classic stroke symptoms and made Lloyd wait for 12 hours in the ER waiting room with little to no care several times despite Lloyd having chest pains, abnormal lung sounds, shortness of breath and other serious symptoms.

51.  From October 1 2023 to present, Lancaster General Hospital, stated on their website "Guided by our blueprint for Quality and Patient safety, our multidisciplinary team collaborates every day to achieve a safe, error-free environment for patients and their families

52.  This statement is false as LGH knows they are short staffed and are not able to provide quality care to LLoyd. Also LGH misdiagnosed Lloyd with acid reflux when she had pneumonia, told Lloyd her brain MRI was normal when in fact it showed Lloyd had 2 strokes, and told Lloyd her finger xray was normal when Lloyd actually had a severe infection in her finger.

53.  From October 1 2023 to present, Lancaster General Hospital states on their website "Penn medicine is committed to the highest standard of patient care, education and research.  Were proud to be recognized both regionally and nationally for our exceptional clinical team, research breakthroughs and workplace culture"

54.  This statement is false as LGH misdiagnosed Lloyd 3 times

55.  From October 1 2023 to present, Lancaster General Hospital states on their website "Penn medicine is committed to delivering quality medical care to all patients while their time in our hospitals and outpatient locations as pleasant as possible"

56.   This statement is false.  LGH misdiagnosed Lloyd 3 times and allowed John Allen to have anger outbursts towards Lloyd while his staff mocked Lloyds disabilities and made fun of Lloyd and their ER staff writes Lloyd is a he when Lloyd has always been known as a she and then allowed John Allen to defame Lloyd in her medical record amongs many other things.

57.   From October 1 2023 to present, Lancaster General Hospital states on their website under Statement of Patients rights "You have the right to respectful care given by competent personnel which reflects consideration of your cultural and personal values and belief systems and optimizes your comfort and dignity"

58.   This statement is false. LGH allowed John ALlen to have anger outbursts towards Lloyd when Lloyd was trying to inform him of very low blood sugars, etc and then allowed John Allens staff to mock Lloyd and make fun of Lloyds disabilities and Lloyds efforts to wrok again as an RN

59.   From October 1 2023 to present, Lancaster General Hospital states on their website "You have the right to every consideration of privacy concerning your medical care program"

60.   This statement is false as John Allen, Beth Katz and security were discussing Lloyds private medical information

in violation of HIPPA when none of them had Lloyds
permission to do so

61.  From October 1 2023 to present, Lancaster General
Hospital states on their website "You have the right to
expect emergency procedures to be implemented without
unnecessary delay"

62.  This statement is false.  LLoyd was ignored for up to 12
hours at a time in the ER waiting room while she
experienced severe chest pains, shortness of breath, high
fevers and hypertensive crisis, and severe dizziness where
Lloyd actually almost passed out and knocked a nurse over.

63.  From October 1 2023 to present, Lancaster General
Hospital states on their website "You have the right to
good quality care and high professional standards that are
continually maintained and reviewed"

64.  This statement is false for all of the reasons in 1-63
above

65.  From October 1 2023 to present, Lancaster General Health
states on their website"You have the right to medical and
nursing services without discrimination based upon age,
sex, race, color, ethnicity, religion, gender, disability,
ancestry, national origin, marital status, familial status"

66.  This statement is false as Lloyd was defamed and gaslit
by John Allen who stated Lloyd is mentally ill despite

never referring Lloyd to any therapist and by his own
medical charting, never even prior suggesting Lloyd had any
history of mental illness. Lloyd was gaslit by John Allen
due to her female sex and was mocked and discriminated
against by John Allens staff due to her disabilities

67. From October 1 2023 to present, Lancaster General Health
states on their website, "You have the right to receive
care in a safe setting that is free from
abuse,harassment,neglect, exploitation and verbal, mental,
physical and sexual abuse"

68. This statement is false.  John Allen lashed out at Lloyd
several times for no reason in person and through a my
chart message when Lloyd was only trying to inform him of
serious medical conditions such as low blood sugars and
gaslit Lloyd due to her female sex.  John Allens staff also
mocked Lloyds disabilities.

69. From October 1 2023 to present, Lancaster General Health
states on their website " You have the right, without
recrimination, to voice complaints or grievances regarding
your care, to have those complaints or grievances reviewed,
and when possible resolved"

70. This statement is false.  When Lloyd made legitimate
complaints against John Allen and LGH, they began to treat

Lloyd as if she was a criminal and even got security involved.

71.  All of the above statements are false.

72.  Lloyd did not receive the highest quality of care when she needed it most and in the middle of having a stroke, her complaints were dismissed after LGH and MRI group misread Lloyds MRI as normal

73.  Despite knowing LLoyds MRI shows 2 strokes, they have continued to state that Lloyds brain MRI was normal

74.  LGH is not an error free environment as stated above and in fact, GROSSLY misdiagnosed Lloyd multiple times

75.  On April 17 2023, LGH physician Timothy Labosh told Lloyd she had acid reflux when in reality Lloyd had pneumonia in both of her lungs

76.  In October and November 2023, after being sent to ER multiple times by John Allen, LGH dismissed Lloyds hypertensive crisis of new onset blood pressure in the 180s

77.  On July 31 2024, LGH and MRI group told Lloyd her brain mRI is normal when in reality, it showed Lloyd had 2 strokes

78.  On March 3 and March 5 2025, John Allen, without ever referring lloyd to a therapist, diagnosed Lloyd with mental illness when he knows Lloyd has no mental illness history and Lloyd presented him with written documentation showing

her diagnosis (none of which were mental) and  most made at
Cleveland Clinic

79.  On May 12-13, 2025 LGH misread an xray of Lloyds finger
as normal when Lloyd had a severe infection in her finger

80.  LGH does not give respectful care and in fact a nursing
assistant who works with John Allen was laughing at Lloyd
about her trying to work again as a nurse and told Lloyd
that if she was working as a nurse, she would be in the
back of the office taking her blood pressure all the time
when Lloyd presented to John Allens office after getting
dismissed from PT for extremely low blood pressures causing
pre syncope

81.  Furthermore, John Allen lost his temper on Lloyd several
times for no reason including in a mychart message when
Lloyd was letting him know about her extremely low blood
sugars

82.  John allen always told Lloyd to keep him informed if
Lloyd has any issues and then became angry with Lloyd over
Lloyd letting him know about very low blood sugars and
other serious medical conditions.

83.  LGH also knows that John allen ignored messages from CHOP
about Lloyds new onset right sided weakness and ignored
Lloyds messages about low blood pressures, low oxygen
levels and low blood sugar readings

84.  LGH does not respect privacy and violated HIPPA when John Allen, Beth Katz and security were discussing Lloyds medical information without Lloyds permission

85.  LGH also does not implement emergency procedures on a timely basis as they left Lloyd in the waiting room for over 12 hours when Lloyd presented with fevers over 101, chest pains, shortness of breath and pre syncope.

86.  At one visit after being forced to sit in waiting room for 12 hours with no aid, Lloyd was so dizzy, she fell over a nurse and almost knocked her to the floor when finally called into the back

87.  On or about November 1 2025, Lloyd was told by the PA Department of Health that LGH is short staffed and that is a known factor they are working on with LGH

88.  LGH knows they are unable to provide quality medical care to Lloyd being short staffed and instead continued to allow patients to enter for financial gain

89.  Lloyd was there for iv fluids in March 2025 as she suffered several pre syncope spells in a 3 day period due to high fevers over 101 and not being able to eat due to a severe sore throat

90.  John Allen referred Lloyd to the ER 3 times in one week as a result

91.  Despite knowing this, Lloyd was left in the waiting room
     for 12  hours with no care except blood work amongst dozens
     of other people screaming in pain, chest pains, etc

92.  When you are sitting 12 plus hours in a chair in the ER
     waiting area, no one comes to check on you

93.  You could be deceased and no one notices

94.  In 12 plus hours, no one even bothers to recheck your
     vital signs.

95.  As a former ER nurse herself, Lloyd knows it is standard
     for someone to check on all waiting ER patients at least
     every 2 hours or so.

96.  Then when you finally get called into the back, the rooms
     are empty which shows the real issue is LGH does not have
     enough staff which the Board of Health told Lloyd they know
     LGH is short staffed

97.  Lloyd made a complaint to the Board of Health for
     multiple violations of LGH including Lloyd has never seen
     anyone washing their hands or use hand sanitizer before
     touching Lloyd, noone checks on waiting patients,  Lloyds
     notes call Lloyd a he and a she- for the record, Lloyd is a
     she and always has been a she since birth, LGH employees
     keep their badges flipped upside down so you cannot
     identify the healthcare provider, Lloyd had a right for
     another healthcare provider to see her when she complained

about getting dismissed when in a hypertensive crisis and dismissed with fevers that persisted for a week.

98.  As a result of all of the above, sometimes Lloyd had to return to the ER 4 times in one week as she was either dismissed or ignored for 12 hours to the point Lloyd left.

99.  Then when Lloyd got fed up and felt she could treat herself better at home, the ER writes Lloyd eloped but never stated Lloyd left after sitting in a waiting room chair for 12 hours and not receiving any care, even a vital sign check

100. LGH knows about these issues as they have many complaints and lawsuits and yet have failed to correct any of them

101. LGH discriminates also by letting their employees at Strasburg mock Lloyd and "make fun" of Lloyds disabilities and state if Lloyd was working at LGH, she would be in the back room taking her blood pressure all day long knowing Lloyd was having severe episodes of Bp in the 70/40 and 80/50 ranging and severe presyncope at PT as a direct result

102. Any healthcare professional known a BP of 70/40 and 80/50 is life threatening

103. Instead of Lloyd getting the dignified care she deserved as a patient, instead she was made fun of by John Allen staff and then John Allen writes in Lloyds chart that Lloyd

has a mental illness that makes her go to doctors all the time when John Allen is the reason why Lloyd went to all of these doctors and had all of these tests

104. John Allen continued to refer Lloyd to numerous specialists and numerous tests for financial gain for himself and LGH

105. Contrary to above which states "You have the right to receive care in a safe setting that is free from abuse,harassment,neglect, exploitation and verbal, mental, physical and sexual abuse", Lloyd was verbally abused by John allen several times and harassed and made fun of by LGh employees when all Lloyd was trying to do was get better so she could work again as an RN.

106. Then when Lloyd made complaints to LGH about their radiology reports and John Allen, Lloyd was treated as if she was a criminal and received no trespass letters that you would send out if you were a victim of domestic violence or if someone was threatening you

107. Lloyd asserts she never harassed or threatened anyone at LGH

108. As a direct result of LGH and John Allen treating Lloyd as if she was a criminal, LLoyd terminated all of her care from LGH.

109. LGH fraudulently concealed from Lloyd that they do not have high quality doctors to read radiology studies and to diagnose Lloyd

110. Despite knowing that their doctors grossly misdiagnosed Lloyd several times, LGH has done nothing in response to correct the situation, correct the errors in Lloyds medical record and never even reported these errors to the state as required by law.

111. With intent to deceive and mislead, LGH kept false statements on their website to attract Lloyd to use their services.

112. LGH knew their statements were false as stated above in 1-111

113. LGH knew at the time they made these statements that they were false and they do not give high quality care, do not protect Lloyds privacy and actually retaliate against Lloyd for making legitimate complaints about their radiology personnel, their doctors and John Allen who all either grossly misdiagnosed Lloyd or ignored serious medical conditions

114. LGH statements published on their website were false and they knew at the time they published those statements they were false as they have many other lawsuits filed against them for similar situations as Lloyds.

115. LGH made these false statements recklessly and
intentionally and maliciously with the intent for Lloyd to
rely on their statements knowing they were false to get
Lloyd to use their services for financial gain

116. As a result of LGH false statements that induced Lloyd to
use their services, LGH profited over 100,000.00 from
Lloyds insurance company, Medicare

117. Lloyd also had a copay for each day of service

118. LGH made these statements to deceive Lloyd and to have
Lloyd use their services and so Lloyd would not question
the care she received

119.  With intent to deceive and mislead, LGH intentionally
deceived Lloyd so Lloyd would rely on the fraudulent
misrepresentations of LGH.

120. LGH intended for Lloyd to rely on their fraudulent
misrepresentations so Lloyd would not take further action
to pursue LGH or to take further action into inquiring
about LGH actions towards Lloyd

121. LGH fraudulently concealed from Lloyd that they do not
retain competent doctors

122. LGh fraudulently concealed from Lloyd that they do not
give high quality care

123. LGH fraudulently concealed from Lloyd that they do not
    know how to read radiology studies or diagnose medical
    conditions

124. LGH fraudulently concealed from Lloyd that they harass
    their patients

125. LGH fraudulently concealed from Lloyd that they allow
    their staff to make fun of Lloyds medical conditions and
    discriminate against their patients

126. LGH fraudulently concealed from Lloyd that they violate
    HIPPA and Lloyds right to privacy

127. LGH fraudulently concealed from Lloyd that they allow
    their doctors such as John allen to verbally abuse a
    patient and lose their temper on a patient for no just case

128. LGH fraudulently concealed from Lloyd  that if you make a
    complaint about LGH or a doctor, then they will treat you
    like a criminal

129. LGH fraudulently concealed from Lloyd that on April 17
    2023, Lloyd had pneumonia in both her lungs

130. LGH fraudulently concealed from LLoyd that on July 31
    2025, Lloyds MRI showed Lloyd had 2 strokes

131. LGH fraudulently concealed from Lloyd that in May 2025,
    Lloyd had a severe infection in her finger

132.  LGH fraudulently concealed from Lloyd that once their doctors misdiagnose you, then John Allen will gaslight you and blame all of your problems on mental illness

133. The medical records show that LGH took affirmative action to conceal fraud, negligence and wrong doing by omitting the correct diagnosis of Lloyd as pneumonia, 2 strokes and a finger infection and the true circumstances surrounding Lloyds illnesses.

134.  With the intent to mislead and deceive Lloyd, LGH took affirmative action to fraudulently conceal misdiagnoses of Lloyd and all the circumstances surrounding Lloyds illnesses

135. From October 1 2023 to present, LGH misrepresented to Lloyd that her medical information will be kept private under HIPPA and then John allen, Beth Katz and security discussed Lloyds medical information in September/October 2023 without Lloyds permission and 6 months after John Allen was no longer Lloyds physician

136. Beth Katz never had any permission to access or discuss Lloyds medical information

137. Security at LGH never had any permission to access or discuss Lloyds medical information

138. John Allen had no permission to access or discuss Lloyds medical information for at least 6 months prior

139.  Lloyd was justifiable to rely on LGH statements as it
was justifiable for her to do so coming from a hospital
that is part of reputable Penn medicine health system

140. LGH committed fraud when they accumulated over 100,000.00
in charges to misdiagnose Lloyd

141. Lloyd had to go to other providers outside LGH to prove
LGH fraud and to find out what really was wrong with Lloyd
because LGH concealed the facts of this matter from Lloyd.

142. Then after learning of serious misdiagnosis of Lloyd in
September 2025, LGH instead of correcting their errors,
began to treat Lloyd as if she was a criminal even
terminating Lloyd from John Allens practice despite knowing
Lloyd terminated John Allen 6 months prior in March 2025.

143. LGH also had John Allen send Lloyd a letter for Lloyd to
stay away from John allens residence

144. Lloyd asserts she has never tried to enter John Allens
residence and this was done to create a fictional story
that Lloyd was harassing John Allen to get out of legal
trouble

145. In fact John Allen moved to his residence knowing that
Lloyd was supposed to be living feet away from him as per
Lloyds certified letter sent to John Allen in March 2025

146. Lloyd asserts John Allen did not move to his residence
until several months later in July 2025

147. Knowing lLoyd would be living feet away from him, John Allen moved into his unit.

148. John Allen never showed any fear of Lloyd

149. In fact, John Allen wrote in his March 2025 notes for Lloyd to come back in June 2025 but once again Lloyd fired him in March 2025 due to his defamation of Lloyd.

150. Lloyd sent a demand letter to LGH for compensation in regards to the misread in MRI.

151. Lloyd specifically put in the demand letter, she was still unhappy with John Allen for making defamatory comments about her

152. After getting the demand letter from Lloyd, John Allen and LGH began to treat Lloyd like a criminal and to create a fictional story that John Allen was afraid of Lloyd and Lloyd harassed John Allen

153. John Allen and LGH committed criminal activity towards Lloyd and violated 18 PACS 2709 by falsely accusing Lloyd of harassing John Allen

154. LGH actions are malicious, intentional and reckless with the sole purpose of causing Lloyd harm and punitive damages should be awarded as a direct result.

155. LGH has taken affirmative action to conceal their fraud, wrong doing and gross negligence by adding false information into Lloyds medical records including Lloyd has

mental illness, Lloyd never had a stroke, etc as stated in 1-154 above

156. Not only did LGH fraudulently conceal from Lloyd that Lloyd had 2 strokes, pneumonia and a finger infection but they also fraudulently concealed from Lloyd that John Allen was writing that Lloyd had a mental illness

157.  LGH made representations to Lloyd and concealed the fact they were false.

158. LGH representations were known to LGH to be false, were material in nature and were intended to deceive and defraud Lloyd.

159. LGH knew that Lloyd would rely on that information and it was reasonable for her to do so coming from a hospital associated with Penn Medicine.

160. As a result of this conduct, Lloyd suffered damages.

161.  LGH knew or were reckless and indifferent to the veracity of knowing they fraudulently concealed relevant information from Lloyd.

162. LGH took affirmative action to conceal their fraudulent statements from Lloyd by having false statements in LLoyds medical records as stated in 1-161 above

163. LGH also took affirmative action to conceal their fraud, wrong doing and gross negligence from Lloyd by making false statements in Lloyds medical records

164. These incidents were a substantial matter and material
    to the transaction and Lloyd justifiably relied on them to
    make a decision to decide on where to get medical care and
    Lloyd thought she was going to a hospital who was ethical
    and would not conceal information from Lloyd.

165. Lloyd justifiably relied on these statements and they
    were made to induce Lloyd to use LGH and they did in fact
    induce Lloyd to use their services.

166. LGH intended for Lloyd to rely on these statements and
    they committed fraud for financial gain.

167. If Lloyd would have known LGH were going to commit fraud,
    she never would have used their services or completed the
    transactions.

168. As a result of LGH conduct, Lloyd was injured and it was
    reasonable for Lloyd to rely on LGH statements as any
    reasonable person would have done coming from a hospital
    associated with Penn medicine.

169. LGH committed fraud and then continued to bill Lloyd and
    Medicare for the tune of over 100,000.00 profit  knowing
    they committed fraud and fraudulently concealed all of the
    above from Lloyd.

170. If Lloyd would have known that LGH were committing
    fraudulent concealment, she never would have started going

there let alone establish a patient /doctor relationship with them or their employees.

171. Under an established patient/doctor relationship, LGH had a duty to speak and instead chose to remain silent.

172. Under vicarious liability and fiduciary duty and respondeat superior, LGH can be held liable for acts of their employees including John Allen

173. LGH actions were reckless, outrageous, willful and wanton thereby justifying punitive damages.

174. As a result of LGH conduct, Lloyd suffered severe damages.

175. A hospital under Pa law shall be influenced only by the welfare of the patient, the safety of the public and the need to uphold the publics trust.

176.  Intentionally misdiagnosing Lloyd several times and then falsely  stating Lloyd has mental illness and then treating Lloyd like a criminal when she made legitimate complaints about LGH and John Allen caused Lloyd to lose trust in medical field that a hospital feels they can conceal relevant information from Lloyd and then write defamatory statements in Lloyds medical record and then violate HIPPA on top of everything else

177.  Lloyd could not have discovered LGH fraudulent concealment without getting her medical records and seeing other physicians outside of LGH

178.  LGH and Lloyd had a recognized doctor/patient relationship where they were obligated to disclose and had a duty to disclose relevant information related to LLoyd but failed to do so by remaining silent or supplying Lloyd with false information when they had a duty to speak the truth which breached the fiduciary duty and was fraudulent concealment.

179.  LGH intentional concealment of Lloyds real medical diagnosis were all material to the transaction.

180.  LGH falsified Lloyds medical records to conceal  2 strokes, pneumonia and a finger infection from Lloyd

181. If Lloyd knew LGH were committing fraud, she never would have established a doctor patient relationship or used their services.

182. Beginning April 1 2023,LGH concealed and suppressed a material fact when they concealed they did not have enough staff or competent physicians to properly care for Lloyd

183.  All of the above statements were material to the transaction at hand.

184. LGH intentionally concealed and suppressed these facts with the intent to defraud Lloyd for financial gain to the tune of financial gain over 100,000.00

185.  LGH know they did not have enough staff or competent staff  to properly care for Lloyd and yet continued to do so anyways

186. LGH knew they did not have competent staff to care for Lloyd and then treated Lloyd like a criminal when Lloyd made complaints about John Allens abuse towards Lloyd and their serious misdiagnosis of Lloyd

187. Lloyd was unaware of these facts in 1-186 and if she would have known, she would not have used LGH for her medical care or completed the transactions.

188. As a result of LGH fraudulent concealment, Lloyd suffered actual monetary damages, emotional distress , humiliation and other damages

189. Lloyd suffered emotional distress due to LGH conduct of Lloyd not only committing fraud to Lloyd but then treating Lloyd as if she was a criminal based on Lloyds legitimate complaints to LGH

190. LGH took all of the above actions to deceive and mislead Lloyd to conceal their fraud.

191. All of the above representations were made to Lloyd and were false.

192.   Lloyd justifiably relied on LGH statements and it was justifiable for her to do so coming from a hospital associated with Penn medicine.

193. Lloyds justifiable reliance on LGH false statements caused Lloyds damages.

As a result of LGH conduct and fraud, Lloyd suffered ascertainable monetary losses, mental anguish, emotional distress and damages including financial loss including more medical  bills to get a true diagnosis and damages to her health as a result, emotional distress and should be awarded in excess of 100,000.00 for this claim together with interest and other costs and punitive damages and such other relief this court deems reasonable.

LGH actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, and/or punitive damages.

COUNT I- FRAUD AND/OR FRAUDULENT CONCEALMENT AGAINST MRI GROUP

Lloyd incorporates 1- 162 above and includes but not limited to the following:

194. From July 1 2024 to present, MRI group makes the following false statements on their website

195. Physicians and patients trust us because we have a proven track record for fast and accurate test results, affordable cost and high patient satisfaction.  You are in expert hands at MRI group

196. This statement is false as the MRI group know that MRI group misread Lloyds MRI as normal when in reality, the same MRI showed Lloyd had 2 brain stem strokes

197. Despite knowing their report is inaccurate, MRI group failed to amend it

198. With intent to deceive and mislead, MRI group kept false statements on their website to attract Lloyd to use their services.

199. MRI group knew their statements were false

200. MRI group knew at the time they made these statements that they were false and they do not give accurate test results

201. MRI group statements published on their website were false and they knew at the time they published those statements they were false as they have  other lawsuits filed against them for similar situations as Lloyds and misdiagnosis of other patients.

202. MRI group made these false statements recklessly and intentionally and maliciously with the intent for Lloyd to

rely on their statements knowing they were false to get Lloyd to use their services for financial gain

203. As a result of MRI group false statements that induced Lloyd to use their services, MRI group profited from Lloyds insurance company, Medicare and Lloyd

204. MRI group made these statements to deceive Lloyd and to have Lloyd use their services and so Lloyd would not question the care she received

205.  With intent to deceive and mislead, MRI group intentionally deceived Lloyd so Lloyd would rely on the fraudulent misrepresentations of MRI group.

206. MRI group intended for Lloyd to rely on their fraudulent misrepresentations so Lloyd would not take further action to pursue MRI group or to take further action into inquiring about MRI group actions towards Lloyd

207. MRI group fraudulently concealed from Lloyd that they do not provide accurate results

208. MRI group fraudulently concealed from Lloyd that they do not know how to read radiology studies or diagnose medical conditions

209. MRI group fraudulently concealed from LLoyd that on July 31 2025, Lloyds MRI showed Lloyd had 2 strokes

210. The medical records show that MRI group took affirmative action to conceal fraud, negligence and wrong doing by

omitting the correct diagnosis of Lloyd as 2 strokes and the true circumstances surrounding Lloyds illnesses.

211.  With the intent to mislead and deceive Lloyd, MRI group took affirmative action to fraudulently conceal misdiagnoses of Lloyd and all the circumstances surrounding Lloyds illnesses

212.  Lloyd was justifiable to rely on MRI group statements as it was justifiable for her to do so coming from a radiology provider inside of a hospital.

213. MRI group committed medicare fraud when they were paid by Medicare to misdiagnose Lloyd

214. Lloyd had to go to other providers outside MRI group to prove MRI group fraud and to find out what really was wrong with Lloyd  because MRi group concealed the facts of this matter from Lloyd.

215. Then after learning of serious misdiagnosis of Lloyd in March 2025, MRI group refused to correct Lloyds inaccurate MRI report

216. MRI group actions are malicious, intentional and reckless with the sole purpose of causing Lloyd harm and punitive damages should be awarded as a direct result.

217. After being sued previously for harming other people, MRI group made no changes to ensure accurate MRI reports

218. MRI group has taken affirmative action to conceal their fraud, wrong doing and gross negligence by adding false information into Lloyds medical records including Lloyd never had a stroke as stated in 1-217 above

219. MRI group fraudulently concealed from Lloyd that Lloyd had 2 strokes

220. MRI group made representations to Lloyd and concealed the fact they were false.

221. MRI group representations were known to MRI group to be false, were material in nature and were intended to deceive and defraud Lloyd.

222. MRI group knew that Lloyd would rely on that information and it was reasonable for her to do so coming from a radiology group inside a hospital

223. As a result of this conduct, Lloyd suffered damages.

224. MRI group knew or were reckless and indifferent to the veracity of knowing they fraudulently concealed relevant information from Lloyd.

225. MRI group took affirmative action to conceal their fraudulent statements from Lloyd by having false statements in LLoyds medical records as stated in 1-224 above

226. MRI group also took affirmative action to conceal their fraud, wrong doing and gross negligence from Lloyd by making false statements in Lloyds medical records

227.  These incidents were a substantial matter and material to the transaction and Lloyd justifiably relied on them to make a decision to decide on where to get medical care and Lloyd thought she was going to a radiology place who was ethical and would not conceal information from Lloyd.

228.  Lloyd justifiably relied on these statements and they were made to induce Lloyd to use MRI group and they did in fact induce Lloyd to use their services.

229. MRI group intended for Lloyd to rely on these statements and they committed fraud for financial gain.

230. If Lloyd would have known MRI group were going to commit fraud, she never would have used their services or completed the transactions.

231. As a result of MRI group  conduct, Lloyd was injured and it was reasonable for Lloyd to rely on MRI group statements as any reasonable person would have done coming from a hospital associated with Penn medicine.

232. MRI group committed fraud and then continued to bill Lloyd and Medicare for profit  knowing they committed fraud and fraudulently concealed all of the above from Lloyd.

233. If Lloyd would have known that MRI group were committing fraudulent concealment, she never would have started going there let alone establish a patient /doctor relationship with them or their employees.

234. Under an established patient/doctor relationship,MRI
group had a duty to speak and instead chose to remain
silent.

235. Under vicarious liability and fiduciary duty and
respondeat superior, MRI group can be held liable for acts
of their employees

236. MRI group actions were reckless, outrageous, willful and
wanton thereby justifying punitive damages.

237. As a result of MRI group conduct, Lloyd suffered severe
damages.

238. A radiology center under Pa law shall be influenced only
by the welfare of the patient, the safety of the public and
the need to uphold the publics trust.

239.  Intentionally misdiagnosing Lloyd caused Lloyd to lose
trust in medical field that a radiology center feels they
can conceal relevant information from Lloyd

240.  Lloyd could not have discovered MRI group fraudulent
concealment without getting her medical records and seeing
other physicians outside of LGH and mRI group

241.  MRI group and Lloyd had a recognized
doctor/patient/client relationship where they were
obligated to disclose and had a duty to disclose relevant
information related to LLoyd but failed to do so by
remaining silent or supplying Lloyd with false information

when they had a duty to speak the truth which breached the fiduciary duty and was fraudulent concealment.

242. MRI group intentional concealment of Lloyds real medical diagnosis were all material to the transaction.

243. MRI group falsified Lloyds medical records to conceal 2 strokes from Lloyd

244. If Lloyd knew MRI group were committing fraud, she never would have established a doctor/ patient.client relationship or used their services.

245. MRI group concealed and suppressed a material fact when they concealed they did not have enough staff or competent physicians to properly care for Lloyd

246. All of the above statements were material to the transaction at hand.

247. MRI group intentionally concealed and suppressed these facts with the intent to defraud Lloyd for financial gain

248. MRi group know they did not have enough staff or competent staff to properly care for Lloyd and yet continued to do so anyways

249. Lloyd was unaware of these facts in 1-248 and if she would have known, she would not have used MRI group for her medical care or completed the transactions.

250. As a result of MRi group fraudulent concealment, Lloyd suffered actual monetary damages, emotional distress , and other damages including loss of treatment for a stroke

251. Lloyd suffered emotional distress due to MRI group conduct of committing fraud to Lloyd

252. MRI group  took all of the above actions to deceive and mislead Lloyd to conceal their fraud.

253. All of the above representations were made to Lloyd and were false.

254.  Lloyd justifiably relied on MRI group statements and it was justifiable for her to do so coming from a radiology center inside of a hospital

255. Lloyds justifiable reliance on MRI group false statements caused Lloyds damages.

As a result of MRI group conduct and fraud, Lloyd suffered ascertainable monetary losses, mental anguish, emotional distress and damages including financial loss including more medical  bills to get a true diagnosis and damages to her health as a result, emotional distress and should be awarded in excess of 100,000.00 for this claim together with interest and other costs and punitive damages and such other relief this court deems reasonable.

MRI group actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, and/or punitive damages.

COUNT I- FRAUD AND/OR FRAUDULENT CONCEALMENT AGAINST JOHN ALLEN

Lloyd incorporates 1-241 above and includes but not limited to the following:

256. On October 9 2023, When John Allen referred Lloyd to rheumatology and GI, he fraudulently concealed from Lloyd he was referring LLoyd for financial gain for himself and his employer LGH.

257. On October 9 2023, when John Allen told Lloyd to come back to his office in 14 days, he fraudulently concealed from LLoyd he was stating this for financial gain for himself and his employer LGH

258. On October 13 2023, when John Allen referred Lloyd for PFT and blood pressure monitoring, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

259. On October 13 2023, when John Allen told Lloyd to come back to his office in 10 days, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

260. On October 17 2023, when John Allen referred Lloyd to ER, bp tests, breathing tests and cardiology and lab tests, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

261. On October 19 2023, when John Allen referred Lloyd to ER, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

262. On October 30 2023, when John Allen referred Lloyd to endocrinology, PFT studies and bp monitoring , he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

263. On October 30 2023, when John Allen told Lloyd to come back to his office in 4 weeks, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

264. On November 6 2023, when John Allen referred Lloyd to ER and endocrinology, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

265. On November 27 2023, when John Allen referred Lloyd to ER, pulmonary and cardiology, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

266. On November 27 2023, when John Allen told lLoyd to come back to his office in 4 weeks, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

267. On December 18 2023, when John Allen referred Lloyd to pulmonary, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

268. On January 3 2024, when John Allen referred Lloyd to pulmonary and ER,endocrinology, Gastroenterology, Cardiology and rheumatology,  he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

269. On January 3 2024, when John Allen told Lloyd to come back to office in one month, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

270. On january 12 2024, when John Allen referred Lloyd to ER, pulmonary, breathing tests, sleep study, gastroenterology, cardiology and rheumatology, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

271. On January 12 2024, when John Allen told Lloyd to come back to his office in 2 weeks, he fraudulently concealed

from Lloyd he was stating this for financial gain for himself and his employer LGH

272. On January 17 2024, when John Allen referred Lloyd to rheumatology, sleep study and ER, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

273. On January 29 2024, when John Allen referred Lloyd to nephrology, pulmonary, endocrinology, gastroenterology, rheumatology and cardiology, hematology, blood work, pap smear, mammogram, heart cath, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

274. On February 5 2024, when John Allen referred Lloyd to nephrology, pulmonary, endocrinology, gastroenterology, rheumatology, cardiology, exercise test, cpap, pap smear, mammogram and blood work, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

275. On February 8 2024, when John Allen referred Lloyd for extended oxygen studies, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

276. On February 13 2024, when John Allen referred Lloyd for nephrology, pulmonary, endocrinology, rheumatology gi,

cardiology,oxygen studies, physical therapy, ultrasound, cpap, mammogram, pap smear, blood work, he fraudulently concealed from LLoyd he was referring Lloyd for financial gain for himself and his employer LGH

277. On February 27 2024, when John Allen referred Lloyd for ultrasound, cpap, physical therapy, cardiology, moist heat system, pap smear and mammogram, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

278. On February 27 2024, when John Allen told Lloyd to come back to his office in one month, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

279. On March 11 2024, when John Allen referred Lloyd to cardiology, physical therapy, pap smear and mammogram, he fraudulently concealed from Lloyd he was referring Lloyd for financial gain for himself and his employer LGH

280. On march 11 2024, when John allen told Lloyd to come back in 2 weeks to his office, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

281. On March 25 2024, when John Allen referred Lloyd to cardiology and physical therapy and medicare annual wellness exam, he fraudulently concealed from Lloyd he was

referring lloyd for financial gain for himself and his
employer LGH

282. On March 25 2024, when John Allen told lloyd to come back
    to his office in one month, he fraudulently concealed from
    Lloyd he was stating this for financial gain for himself
    and his employer LGH

283. On April 2 2024, when John Allen referred Lloyd for
    overnight oximetry tests, cardiology and physical therapy,
    he fraudulently concealed from Lloyd that he was referring
    lloyd for financial gain for himself and his employer LGH

284. On April 2 2024, when John ALlen told Lloyd to come back
    to his office in 2 weeks, he fraudulently concealed from
    Lloyd he was stating this for financial gain for himself
    and his employer LGH

285. On April 17 2024, when John Allen referred Lloyd to
    overnight oximetry, cardiology, physical therapy, he
    fraudulently concealed from Lloyd he was referring Lloyd
    for financial gain for himself and for his employer LGH

286. On April 17 2024, when John Allen told Lloyd to return to
    his office in 4 weeks, he fraudulently concealed from Lloyd
    he was stating this for financial gain for himself and his
    employer LGH

287. On APril 24 2024, when John Allen referred Lloyd to
    Physical therapy, he fraudulently concealed from Lloyd he

was referring Lloyd for financial gain for himself and his employer LGH

288. On May 3 2024, when John Allen referred Lloyd to overnight oxygen test, cardiac monitor, and physical therapy, he fraudulently concealed from Lloyd that he was referring lloyd for financial gain for himself and his employer LGH

289. On May 3 2024, when John Allen told Lloyd to come back to his office in one month, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

290. On May 3 2024, when Lloyd went back to John Allen office after leaving and he told Lloyd to go to ER, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

291. On June 5 2024, when John Allen referred Lloyd to neurology, blood work and physical therapy, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

292. On June 5 2024, when John Allen stated Lloyd should return to his office in 2 weeks, he fraudulently concealed from Lloyd he was stating this for financial gain for himself and his employer LGH

293. On June 21 2024, when John Allen referred Lloyd to neurology and cardiology, he fraudulently concealed from Lloyd he referred Lloyd for financial gain for himself and his employer LGH

294. On June 21 2024, when John Allen stated Lloyd should return to his office in 4 weeks, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and his employer LGH

295. On July 1 2024, when John ALlen referred Lloyd for MRI, cardiology and neurology, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

296. On JUly 1 2024, when John Allen told Lloyd to return in 4 weeks to his office, he fraudulently concealed from Lloyd that he was stating this for financial gain for himself and for his employer LGH

297. On July 24 2024, when John Allen referred Lloyd for MRI, neurology and cardiology, he fraudulently concealed from Lloyd that he was referring Lloyd for financial gain for himself and for his employer LGH

298. On July 24 2024, when John ALlen told Lloyd to return in 4 weeks to his office, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and for his employer LGH

299. On August 9 2024, when John Allen referred Lloyd to neurology and cardiology, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

300. On August 9 2024, when John Allen told Lloyd to return in 4 weeks to his office, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and his employer LGH

301. On August 26 2024, when John Allen referred Lloyd to neurology, physical therapy and CPAP, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

302. On August 26 2024, when John Allen told Lloyd to return to his office in 2 months, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and for his employer LGH

303. On September 3 2024, when John Allen referred Lloyd to neurology, he fraudulently concealed from LLoyd that he referred Lloyd for financial gain for himself and his employer LGH

304. On September 23 2024, when John Allen referred Lloyd to nutritionist, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and for his employer LGH

305. On September 27 2024, when John Allen referred Lloyd to
neurology, barium swallow, gastroenterology, and CPAP, he
referred Lloyd for financial gain for himself and his
employer LGH

306. On September 27 2024, when John Allen told Lloyd to
return to his office in one month, he fraudulently
concealed from Lloyd he stated this for financial gain for
himself and his employer LGH

307. On October 16 2024, when John Allen told Lloyd to return
to his office in 2 months, he stated this for financial
gain for himself and for his employer LGH

308. On November 25 2024, when John Allen referred Lloyd for
blood work and a continous blood sugar montior, he
fraudulently concealed from LLoyd he referred Lloyd for
financial gain for himself and his employer LGH

309. On November 25 2024, when John Allen told Lloyd to return
to his office in 4 weeks, he stated this for financial gain
for himself and his employer LGH

310. On November 29 2024, when John Allen referred Lloyd to
endocrinology, he fraudulently concealed from Lloyd he
referred Lloyd for financial gain for himself and his
employer LGH

311. On November 29 2024, when John Allen told Lloyd to return
to his office in 4 weeks, he fraudulently concealed from

Lloyd he stated this for financial gain for himself and his employer LGH

312. On December 16 2024, when John Allen referred Lloyd to endocrinology, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and for his employer LGH

313. On December 16 2024 when John Allen told Lloyd to return to his office in 4 weeks, he fraudulently concealed from Lloyd he stated this for financial gain for himself and his employer LGH

314. On March 3 2025, when John Allen referred Lloyd to neurology and gastroenterology, he fraudulently concealed from Lloyd that he referred Lloyd for financial gain for himself and his employer LGH

315. On March 3 2025, when John Allen told Lloyd to return to his office in 3 months, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and his employer LGH

316. On March 5 2025, when John Allen told Lloyd to return to his office in 3 months, he fraudulently concealed from Lloyd that he stated this for financial gain for himself and his employer LGH

317. Prior to beginning with John Allen October 9 2023, Lloyd did not see a rheumatologist in over 5 years and had no

desire to go back but John Allen insisted that Lloyd continue to go see one

318. Since terminating John Allen, Lloyd has not continued to see any rheumatologist

319. Prior to beginning with John Allen October 9 2023, Lloyd did not see an endocrinologist in over 5 years and had no desire to go back but John Allen insisted that Lloyd continue to go see one

320. Since terminating John Allen, Lloyd has not continued to see any endocrinologist

321. Prior to beginning with John allen October 9 2023, Lloyd did not see a hematologist in about 5 years and had no desire to go back but John Allen insisted that Lloyd continue to go see one

322. Since terminating John Allen, Lloyd has not continued to see any hematologist

323. Prior to beginning with John Allen October 9 2023, Lloyd did not see a neurologist since 2021.

324. Prior to beginning with John Allen October 9 2023, LLoyd did not see a nephrologist in over 5 years and has no desire to go back but John Allen insisted that Lloyd continue to go see one

325. Since terminating John Allen, LLoyd has not continued to see any nephrologist

326. Prior to beginning with John Allen October 9 2023, Lloyd did not see a gastroenterologist in over 5 years  and has no desire to go back but John Allen insisted that Lloyd continue to go see one

327. Since terminating John Allen and being placed on creon, Lloyd has not continued to see any gastroenterologist on a regular basis

328. Prior to beginning with John Allen, Lloyd may have seen a primary doctor a few times a year and that was for acute problems only such as infections, covid, etc

329. When Lloyd was seeing John Allen, he insisted on Lloyd coming to see him every 2-4 weeks

330. When Lloyd was seeing John Allen, he routinely insisted on LLoyd being seen in the ER

331. Since terminating John Allen Lloyd was seen in ER for severe chest pains and for finger infection that was progressively getting worse and that was it

332. As per John Allen all of the referrals he gave Lloyd and all of the tests he gave LLoyd  were not necessary because as per John Allen, Lloyd is having a mental illness that is causing her to go to doctors and have tests done

333. In reality John Allen is the one who referred Lloyd to all of these doctors and all of these tests as stated in 1-332 above

334. Not one time did John Allen ever refer Lloyd to a
     therapist

335. John allen referred Lloyd to all of these doctors and all
     of these tests for financial gain for himself and for his
     employer LGH to the amount that well exceeds 100,000.00

336. Lloyds medical records show that John Allen took
     affirmative action to conceal fraud, negligence and wrong
     doing by continuously referring Lloyd to multiple doctors
     and multiple tests for financial gain

337. John Allen did this with the intent to mislead and
     deceive Lloyd

338. Lloyd thought John Allen was referring LLoyd to all of
     these doctors and tests so he could help Lloyd work again
     as a nurse

339. John Allen fraudulently concealed from Lloyd that he was
     referring Lloyd to all of these doctors and all of these
     tests so he could then write in Lloyds legal medical record
     that Lloyd has mental illness and he and LGH could have
     financial gain.

340. John Allen committed fraud when he continuously referred
     Lloyd to doctors and tests when as per him, there was no
     reason LLoyd had to go

341. John Allen committed fraud when he continuously referred Lloyd to doctors and tests for his own financial gain and the financial gain of his employer LGH

342. Lloyd had to read her own medical records to see that John Allen write that Lloyd had a mental illness and that is why she is seeing doctors

343. In reality, Lloyd was seeing doctors because John Allen continuously referred Lloyd to multiple doctors as stated in 1-342 above

344. John Allens actions are malicious, intentional and reckless with the sole purpose of causing Lloyd harm and punitive damages should be awarded as a direct result.

345. John Allen has taken affirmative action to conceal his fraud, wrong doing and gross negligence by adding false information into Lloyds medical records as stated in 1-344 above

346. John Allen representations were known  to be false, were material in nature and were intended to deceive and defraud Lloyd.

347. John Allen knew that Lloyd would rely on that information and it was reasonable for her to do so coming from a doctor associated with LGH and Penn medicine

348. As a result of John Allens conduct, Lloyd suffered damages.

349. John Allen knew or were reckless and indifferent to the veracity of knowing they fraudulently concealed relevant information from Lloyd.

350. John Allen took affirmative action to conceal his fraud from Lloyd by constantly referring Lloyd to doctors, er, blood work and other tests

351. John Allen also took affirmative action to conceal their fraud, wrong doing and gross negligence from Lloyd by making false statements in Lloyds medical records

352.  These incidents were a substantial matter and material to the transaction and Lloyd justifiably relied on them to make a decision to decide on where to get medical care and Lloyd thought she was going to a doctor who was ethical and would not conceal information from Lloyd.

353.  Lloyd justifiably relied on these statements and they were made to induce Lloyd to use John Allen and he did in fact induce Lloyd to use his services and as a result John Allen and LGH made over a 100,000.00 on Lloyds medicare and Lloyds copays.

354. John Allen intended for Lloyd to rely on these statements and committed fraud for financial gain.

355. If Lloyd would have known John Allen were going to commit fraud, she never would have used their services or completed the transactions.

356. As a result of John Allens  conduct, Lloyd was injured and it was reasonable for Lloyd to rely on John Allen statements as any reasonable person would have done coming from a doctor associated with Penn medicine.

357. John Allen committed fraud and then continued to bill Lloyd and Medicare for profit  knowing he committed fraud and fraudulently concealed all of the above from Lloyd.

358. If Lloyd would have known that John Allen was committing fraudulent concealment, she never would have started going there let alone establish a patient /doctor relationship with him  or his employer LGH

359. Under an established patient/doctor relationship,John Allen had a duty to speak and instead chose to remain silent.

360. In fact, John Allen never even told Lloyd to her face he thought she had a mental illness

361. Lloyd had to get her medical records and read John Allens notes to see what he wrote to discover this information

362. Under vicarious liability and fiduciary duty and respondeat superior, LGH  can be held liable for acts of their employees  including John Allen

363. John Allens actions were reckless, outrageous, willful and wanton thereby justifying punitive damages.

364. As a result of John Allens conduct, Lloyd suffered severe damages.

365. As a doctor, John Allen  under Pa law shall be influenced only by the welfare of the patient, the safety of the public and the need to uphold the publics trust.

366.  Intentionally committing fraud caused Lloyd to lose trust in medical field that John Allen feels they can conceal relevant information from Lloyd

367.  Lloyd could not have discovered John Allen fraudulent concealment without getting her medical records

368. John Allen and Lloyd had a recognized doctor/patient relationship where he was obligated to disclose and had a duty to disclose relevant information related to LLoyd but failed to do so by remaining silent or supplying Lloyd with false information when he had a duty to speak the truth which breached the fiduciary duty and was fraudulent concealment.

369. John Allen intentional concealment that he was sending Lloyd to numerous doctors and tests for financial gain for himself and his employer LGH was material to the transaction.

370.  If Lloyd knew John Allen was committing fraud, she never would have established a doctor/ patient relationship or used his services.

371. John Allen concealed and suppressed a material fact when he concealed from Lloyd he was sending Lloyd to numerous doctors, er visits, blood work and tests for financial gain for himself and his employer LGH

372. All of the above statements were material to the transaction at hand.

373. John Allen intentionally concealed and suppressed these facts with the intent to defraud Lloyd for financial gain

374. Lloyd was unaware of these facts in 1-358 and if she would have known, she would not have used John Allen for her medical care or completed the transactions.

375. As a result of John Allen fraudulent concealment, Lloyd suffered actual monetary damages, emotional distress , and other damages

376. Lloyd suffered emotional distress due to John Allen conduct of committing fraud to Lloyd

377. Lloyd thought she found a primary care physician who was doing everything to help Lloyd and had no idea what she really found was someone who was only motivated by his own financial gain and the financial gain of his employer LGH

378. John Allen  took all of the above actions to deceive and mislead Lloyd to conceal their fraud.

379.  Lloyd justifiably relied on John Allen and it was justifiable for her to do so coming from a doctor of Penn Medicine.

380. Lloyds justifiable reliance on John Allen caused Lloyds damages.

As a result of John Allen conduct and fraud, Lloyd suffered ascertainable monetary losses, mental anguish, emotional distress and damages including financial loss including more medical  bills, emotional distress and should be awarded in excess of 100,000.00 for this claim together with interest and other costs and punitive damages and such other relief this court deems reasonable.

John Allen actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, and/or punitive damages.

COUNT II- DISCRIMINATION ON THE BASIS OF DISABILITY AND SEX IN A PLACE OF PUBLIC ACCOMODATION AGAINST LANCASTER GENERAL HOSPITAL

Lloyd incorporates 1-380 above and includes but not limited to the following:

381. Lloyd was receiving treatment at LGH for multiple medical issues including but not limited to low blood sugars, low

blood pressures, low oxygen levels and other serious life
threatening conditions

382. LLoyd wanted the best care possible so chose Lancaster
General Hospital as they are associated with Penn medicine,
a world renowned healthcare system

383. Lloyd has been protected under disability law since
having a stroke in 2006

384. Although LGH holds itself out as a place that does not
discriminate and is welcoming to all members of the public,
it was anything but for Lloyd

385. Lloyd was subjected to severe, offensive, and deeply
harmful discrimination and treatment because of her
disability

386. In one egregious example, on a visit to John Allens
office, a nursing assistant who knew Lloyd was trying to
work again as an RN, laughed with other members of the
staff at John Allens office and stated that if Lloyd was
working there, she would be in the back room taking her
blood pressure all of the time

387. Another egregious example was when a separate nursing
assistant  told Lloyd (during office visit when Lloyd was
discussing her discharge from PT due to extremely low bp
and presyncope) that if Lloyd continues to come to the
office as often as she does then John Allen is going to

think that Lloyd likes him and then she laughed and said "I love my job"

388. Lloyd is unsure these individuals names as they all had their badges flipped backwards and soon after only had Silest as her NA and it was not Silest who made either of these comments to Lloyd.

389. It appears that maybe John Allen was telling his staff that Lloyd liked him and then they began to harass Lloyd as a result

390. Lloyd often wondered if his staff teased John Allen and maybe that was one of the reasons he turned on Lloyd as in the beginning he appeared to really want to help Lloyd and then kaboom, the floor fell out from underneath Lloyds feet

391. John Allen then falsely began to accuse Lloyd of mental illness despite never referring Lloyd to any therapist

392. At all times John Allen stated that Lloyds mood and affect is normal

393. When filling out forms for Lloyds disability insurance company on September 4 2025, John Allen never mentioned any mental illness and in fact said N/A to the question about mental illness.

394. On September 4 2025, John ALlen told Lloyds disability company she cannot work as a direct result of dizziness,

low blood pressures etc (all physical and no mental
illness)

395. Lloyd was subjected to inferior treatment by John Allen
and his staff due to Lloyds disabilities and being female
sex.

396. Being incorrectly labeled as mentally ill and being
harassed by John Allens staff with inappropriate comments
while  Lloyd was trying to get better so she could work
again as an RN, made Lloyd feel embarrassed, humiliated and
less than a human being who deserved respect at all times
from her healthcare providers

397. Being incorrectly labeled as mentally ill and being
harassed by John Allens staff with inappropriate comments
while  Lloyd was trying to get better so she could work
again as an RN made lloyd lose complete faith in the
medical system

398. Lloyd chose Lancaster General Hospital as it was part of
Penn medicine and remained a patient there because Lloyd
thought it would give Lloyd the best chance to work again
as an RN.

399. But, over the past 2 years, Lloyd  has had to balance the
benefit of a Penn medicine hospital with the considerable
personal cost of being subjected to pervasive

discriminatory treatment in the very hospital she entrusted with her life.

400. That discrimination—and the persistent fear that Lloyd might experience similar mistreatment at any other hospital has caused Lloyd to suffer significant emotional distress, humiliation and embarrassment all the while trying to overcome her health challenges

401. Lloyd brings this civil rights lawsuit against Lancaster General Health for violating her civil rights under the pennsylvania and federal discrimination laws and its implementing regulations.

402. Lloyd seeks compensatory damages, punitive damages and all appropriate injunctive and equitable relief to address, remedy the effects of, and prevent the recurrence of the discriminatory treatment and hostile health care environment to which she has been subjected at Lancaster General Health

403. As a direct result of John Allen stating Lloyd is mentally ill in her medical records and the disparate treatment she received from his office staff, Lloyd terminated her doctor/patient relationship with John Allen and his office in March 2025

404. Lloyd was horrified to hear comments from John Allens office staff and was horrified to read that John Allen, who

she entrusted with her life, stated Lloyd has mental illness

405. Lloyd to this date cannot understand why John Allen flipped on Lloyd and why his staff would make such egregious comments about Lloyd knowing how hard Lloyd was working to get better and work again as an RN

406. From October 9 2023 to March 2025, Lloyd lost 50 pounds and got off the use of a mobility scooter and oxygen and felt her life was finally getting better before the rug was swept out under her feet by John Allen and his staff

407. After discovering John Allens mistreatment and his staffs actions, Lloyd suffered extreme distress and fear of what other providers would think of her as medical records are shared even between other facilities not just LGH doctors.

408. Since john Allen determined Lloyd to be mentally ill (again without ever referring Lloyd to any therapist and knowing Lloyd has zero history of any mental illness), Lloyd has felt the need to explain to every other provider since what John Allen wrote, why Lloyd felt he wrote it and why it was untrue

409. Since then, Lloyd feels she is being deprived of the medical treatment she needs to overcome her health conditions and to work again as a nurse.

410. In March 2025, Lloyd sent letters to LGH and John Allen asking them to remove John Allens false statements from Lloyds medical records but they both refused

411. In fact, even after learning that LGH misread Lloyds brain MRI in July 2024, John Allen and LGH still refused to remove John Allens disparaging comments about Lloyd

412. John Allens exact words were "With all due respect, I have said what i have said" which shows his egregious attitude towards Lloyd and his hostile behaviors

413. To make John Allens actions even worse, after sending a demand letter to LGH for the misread in Lloyds mRI, John Allen and LGH began to treat Lloyd as if she was a criminal

414. To date, LGH and John ALlen have took no actions to remove false statements from Lloyds chart including John Allens false statements about Lloyd having mental illness and refused to amend MRI report reflecting Lloyds 2 strokes

415. Instead of being treated like a stroke patient, LGH, John Allen and his staff treated Lloyd as if she had mental illness while Lloyd was in the midst of another stroke

416. John Allen and LGH completely dismissed Lloyds new onset stroke symptoms as mental illness

417. John Allens false statements in Lloyds chart along with the misread MRI report has caused Lloyd severe damage to her health including right sided weakness and the inability

to get the medical care she needs to overcome her health
challenges including physical therapy, eeg to check for
seizures, etc'

418. John Allens and LGH  misdiagnosis of Lloyd was deeply
distressing to Lloyd, and it exacerbated her disability and
caused Lloyd not to receive care for new stroke.

419. It reinforced Lloyds understanding that health care
providers do not care or want to treat patients with long
term chronic health conditions and it is easier for them to
gaslight patients and label them as mentally ill and
healthcare workers are not properly trained on how to treat
chronically ill patients  with dignity and respect.

420. Gaslighting is what John Allen did to Lloyd and it is
common among female patients to die because a doctor such
as John Allen gaslights them and falsely calls them
mentally ill

421. Gaslighting is known to cause female deaths as it more
likely happens to females who are dismissed by doctors as
being mentally ill

422. John Allen knew when he wrote in Lloyds chart that Lloyd
is not mentally ill and has no history of any mental
illness.

423. At all relevant times, Lancaster General Hospital has
been obligated to treat Lloyd and other woman with a

disability  consistent with other patients who are male and
not chronically ill

424. Lancaster General Hospital failure to delete John Allens
false statements in Lloyds medical records and to treat
Lloyd as any other patient is a violation of Pennsylvania
and federal law prohibition on unlawful discriminatory
practices based on disability and sex.

425. On Lancaster General Hospitals website, they state they
will not discriminate against patients based on sex or
disability and yet did so with Lloyd anyways

426. As a woman with chronic disabilities, it is essential to
Lloyd she be treated  with dignity in every aspect of her
life, particularly at the hospital that she hopes will save
her life.

427. Tragically, Lancaster General Hospital has instead
discriminated against Lloyd due to her sex and her
disability

428. Lloyds emergency room notes on several occasions even
call Lloyd a he when Lloyd has always since birth been a
she.

429. As a direct and proximate result of LGH unlawful actions,
Lloyd has experienced and continues to experience the
harmful effects of being treated differently than other
patients, including by experiencing extreme emotional

distress, embarrassment, stigma, all while living with new deficits from a stroke that LGH misdiagnosed.

430. LGH actions have significantly impeded the progress Lloyd had made in recovering her health and as a result, Lloyd has regained 25 pounds and has suffered emotional distress.

431. The refusal to amend Lloyds medical records in violation of HIPPA and knowing that what LGH and John Allen wrote is false has signaled to Lloyd that LGH does not respect woman with chronic disabilities and have no regards to Lloyds life

432. Lloyd experienced heightened anxiety and trauma symptoms during everyday interactions with LGH—including speaking with doctors, logging into the patient portal, or going to LGH for care.

433. LLoyd has reread every note since seeing John Allen for any other doctor making false statements in her legal medical record

434. Lloyd has listened closely to every conversation around her while sitting in a waiting room at LGH to see if any other provider will make derogatory comments about Lloyd

435. Lloyd has experienced heightened symptoms of trauma and anxiety before any appointment or test at LGH based on the fear that she will be subject to discrimination, disrespect, and hostility from her treating providers

436. Under Pennsylvania and federal law it is unlawful to discriminate against any individual on the basis of sex and disability in a place of public accommodations

437. Hospitals and medical clinics are places of public accommodations under Federal and Pennsylvania laws

438. Through the acts and omissions of LGH  and its personnel complained of herein, LGH, as a place of public accommodation, has discriminated against Lloyd because of her sex and disability, made her feel unwelcome and unsafe as a female with chronic medical conditions, and denied her the full benefits and services to which she is entitled as a patient at LGH.

439.  Lloyd has been injured by LGH discriminatory conduct and has suffered damages as a result.

440. LGH  discriminatory conduct complained of herein was malicious, made with reckless indifference to Lloyds protected rights, and amounted to a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

Lloyd should be awarded in excess of 100,000.00 for this claim including actual damages, emotional distress, court costs, attorneys fees, punitive damages, injunctive relief, declaratory relief and any other relief this court sees fit

COUNT III- VIOLATIONS OF FALSE CLAIMS ACT AGAINST LGH AND JOHN ALLEN

Lloyd incorporates 1-424 above and includes but not limited to the following:

441. As stated in 1-440 above, John Allen referred Lloyd to numerous doctors and tests

442. As per John Allen, these were unnecessary

443. John Allen knew at the time he referred Lloyd for these tests he was fraudulently doing so for financial gain for himself and his employer LGH

444. John Allen  and LGH intentionally submitted false claims to the government (Medicare) for financial gain for himself and his employer LGH

445. Lloyd is allowed to sue John Allen and LGH under "qui tam" liability as it was Lloyds government insurance that John Allen and LGH frauded

446. In 2019, Lancaster General Health agreed to pay 275,000.00 to the Department of Justice for Medicaid fraud which shows that LGH has a history of defrauding the government

447. John Allen and LGH were compensated over 100,000.00 by Medicare for their false claims in Lloyds case

448. John Allen knew at the time he referred Lloyd to gastroenterology, hematology, rheumatology , endocrinology

and other specialists and tests that Lloyd has not seen
these specialists in over 5 years and Lloyd was not
interested in going

449. When Lloyd refused to make the appointments, John Allen
consistently encouraged Lloyd to go to all of these
specialists and tests knowing that Lloyd was not interested
and knowing that these appointments as per John Allen
himself were unnecessary

450. John Allen is the one who referred Lloyd to all of these
specialists and all of these tests and then told Lloyd she
sees too many doctors

451. John Allen actually wrote in Lloyds chart that Lloyd is
having a mental illness that is making her go to all of
these doctors and tests when John Allen himself is the one
who encouraged and forced Lloyd to go to these appointments
despite resistance from Lloyd

452. John Allen made sure Lloyd attended these appointments
for financial gain for himself and LGH for a sum in excess
of 100,000.00

453. Despite knowing LGH has a history of defrauding the
government, John Allen continued the repeated pattern of
defrauding the government as an LGH employee

454. The False Claims act provides that any person who
knowingly submits or causes to submit false claims to the

government is liable for three times the governments
damaged plus  a penalty tied to inflation

455. John Allen and LGH are liable to  Lloyd and Medicare for
well over 100,000.00 in damages

456. Before seeing John Allen, Lloyd did not see these
specialists or undergo these tests for over 5 years

457. Since terminating John Allen and LGH, Lloyd has not seen
any of these specialists and has no intention on doing so
unless something in Lloyds health changes which
necessitates a visit

458. John Allen referred Lloyd to numerous specialists and
tests so he could submit false claims to Medicare for
financial gain for himself and LGH

Lloyd should be awarded in excess of 100,000.00 for this
claim including actual damages, emotional distress, court
costs, attorneys fees, punitive damages, injunctive relief,
declaratory relief and any other relief this court sees fit


CLAIM IV- DEFAMATION PER SE AGAINST JOHN ALLEN AND LGH

Lloyd incorporates 1-442 above and includes but not limited
to the following:

459. On March 3 2025 and March 5 2025, John Allen published in
LLoyds medical records that Lloyd is having a mental

illness which is forcing Lloyd to go to doctors for no reason and having complex medical workups for no reason

460. John Allen knew at the time he published this statement that it was false as he knew that Lloyd was seeing many doctors and undergoing many workups as HE is the one who referred Lloyd to all of these doctors

461. John Allen knew at the time he published this statement that in todays society, LGH shares Lloyds medical records with every hospital in the nation

462. John Allen knew at the time he published this statement that mental illness is a loathsome disease and that other healthcare providers would look negatively at Lloyd as a direct result

463. John Allen knew at the time he published this statement that Lloyd does not have any mental illness nor out of all of the doctors and tests John Allen referred Lloyd to, none of them was a therapist or psychologist

464. John Allen knew when he filled out Lloyds disability forms on or about September 2024, he never mentioned any mental illness

465. John Allen intentionally, willfully, recklessly and maliciously posted that Lloyd has mental illness to cause Lloyd harm

466. John Allen knew at the time he published this statement
that he was negligent and making false statements about
Lloyd

467. Lloyd asked John Allen to remove these statements from
her medical record and John Allens exact words were "I have
said what I have said"

468. As a direct result of John Allen writing false statements
that he knew were false in Lloyds medical record and then
refusing to remove them, John ALlen knew he was injuring
Lloyd

469. Lloyd suffered injuries as a result of John Allens false
statements

470. Furthermore, when Lloyd sent John ALlen a copy of a
demand letter she sent to LGH on or about September 29
2025,  John Allen told LGH that Lloyd was harassing him

471. John Allen had LGH and himself send Lloyd a no trespass
letter for LGH Strasburg and John Allens residence

472. John Allen abused the legal system and sent Lloyd a
letter that a domestic violence victim would send to their
abuser and someone they are afraid of

473. John Allen knew at the time he told LGH that Lloyd was
harassing him that Lloyd never harassed him

474. John  Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never physically or verbally
     attacked him nor did Lloyd ever threaten to do so

475. John Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never followed him in any public
     place

476. John Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never repeatedly committed acts
     towards John Allen that served no purpose

477. John Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never communicated lewd,
     lascivious, threatening or obscene words to John Allen

478. John Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never communicated with him in an
     anonymous manner

479. John Allen knew at time he told LGH that Lloyd was
     harassing him that Lloyd never communicated with him at
     inconvenient hours

480. John Allen falsely told LGH that Lloyd was harassing him
     for the sole purpose to get out of legal trouble as Lloyd
     mentioned him in the demand letter for his defamatory
     statements he published in Lloyds medical records

481. John Allen also knew when he moved into his apartment in
     Willow Street PA  on or about July 2025 that Lloyds unit

would have been feet away as he received Lloyds new address
in March 2025.

482. At no time until Lloyd sent a demand letter did John
Allen fear Lloyd

483. John Allen sent Lloyd a no trespass and no contact letter
for his residence to get out of legal trouble as he knew
Lloyd was pursuing legal action for his false statements he
wrote in Lloyds legal medical record

484. John Allen knew at the time he sent Lloyd the no trespass
letter that Lloyd never tried to enter his residence or
even step foot on the yard surrounding his residence

485. Under section 4906 of 2709 Harassment, John Allen can be
charged criminally for falsely accusing Lloyd of harassing
John Allen

486. As a direct result of John Allens false statements to
LGH, Lloyd terminated all of her care from LGH

487. As a direct result of John Allens false statements to
LGH, Lloyd lost the physicians at LGH such as Dr McPhee who
was trying to help Lloyd lose weight and her cardiologist

488. As a direct result of John Allens false statements to
LGH, Lloyd lost 30 free exercise sessions under Dr McPhees
guidance

489. As a direct result of John Allens false statements to LGH, Lloyd lost her cardiologist group "The Heart Group" that she has seen for over 5 years

490. As a direct result of John Allens false statements to LGH, Lloyd felt humiliated, ashamed, embarrassed and began to fear for her freedom as it became apparent that John Allen and LGH was trying to turn Lloyd into a criminal to get out of legal trouble

491. As a direct result of John Allens false statements, Lloyd suffered actual losses, mental anguish along with other damages

492. It is egregious that John Allen and LGh would turn Lloyd into a criminal

493. John Allen knew Lloyd was striving to reclaim her health so she could possibly work at LGH as an RN

494. Instead, LGH and John Allen turned Lloyd into a criminal which could prevent Lloyd from ever pursuing work again as an RN

495. At the time John Allen and LGH falsely accused Lloyd of a crime, they knew that Lloyd was not doing any criminal activity

496. John Allen and LGH falsely accused Lloyd of harassment so Lloyd would not pursue this litigation and would dismiss all charges against LGH and John Allen

497. LGH knew Lloyd was being falsely accused of a crime by John Allen

498. LGH knew that John Allen told false statements about Lloyd in her medical record and refused to remove them after Lloyd asked them to in March 2025

499. Under vicarious liability, LGH is responsible for John Allens actions

Lloyd should be awarded  in excess of 100,000.00 including actual damages, emotional distress, punitive, court costs, attorneys fees and other damages this court sees fit

V. RES IPSA LOQUITOR AGAINST LGH, MRI GROUP AND JOHN ALLEN

Lloyd incorporates 1-499 above and includes but not limited to the following:

500. On July 31, 2024, LGH, MRI group and John Allen misread Lloyds brain MRI as normal

501. The MRI actually showed Lloyd had 2 strokes, one old and one recent

502. As a direct result, John Allen wrote in Lloyds chart that Lloyd was having a mental illness and never had a stroke and Lloyd has permanent injuries as a result of LGH, MRI group and John Allen dismissing a new brain stem medulla stroke

503. Instead of treating lloyd like a stroke patient, John Allen and LGH and MRI group dismissed LLoyds symptoms of severe new onset exertional headaches and new right sided weakness (all classic signs of a stroke)

504. Even after getting medical records from Roya Vakili, Lloyds neurologist in March 2025 stating MRi showed a new medulla brain stem stroke in Lloyd, , LGH, MRI group and John Allen still dismissed Lloyds stroke.

505. Not at any time did John Allen, LGh or MRi group ever ask for Lloyd to come in and discuss and not at any time did they do any further testing on Lloyd (even tests recommended by Dr Vakili such as an EEG to look for seizures)

506. Despite knowing Lloyd suffered a recent stroke and Dr Vakili was concerned this was causing Lloyd seizures, LGH, John Allen and MRi group still dismissed Lloyd

507. Lloyd wrote to LGH and asked for Lloyds MRI report to be amended.

508. LGH refused to amend Lloyds MRI report

509. To date, John ALlen, LGH, and MRI group refuses to amend Lloyds MRI report and have completely dismissed Lloyds new medulla brain stem stroke

510. As a result, Lloyd was severely injured with right sided weakness and other new disabilities

511. Lloyd would not have sustained these injuries if not for the negligence of John Allen, LGH and MRI group dismissing Lloyds stroke and misreading brain MRI

512. The misread in brain MRI caused Lloyds injuries and the brain MRI was in John Allen, LGH and MRI groups control at all times

513. LLoyd did absolutely nothing to cause any of her injuries

514. In fact, LLoyd did everything correct

515. Lloyd made appointment with John ALlen to discuss her new onset neurological symptoms which he dismissed

516. Lloyd then saw Dr Marni Falk at CHOP and discussed her neurological symptoms with Dr Falk

517. As a pediatric geneticist who sees adults but cannot order MRI or any other tests, Dr Falk did the right thing and immediately contacted John ALlen in regards of her grave concerns of lloyds right sided weakness

518. Lloyd sent mychart messages to John ALlen in regards to her new onset right sided weakness

519. John Allen completely dismissed not only Lloyd but also Dr Falk

520. John Allen, LGH and MRI group also completely dismissed Dr Roya Vakilis diagnosis of Lloyd having suffered a recent medulla brain stem stroke and new onset seizures

521. John Allen instead of treating lloyd for a new stroke, dismissed Lloyd and stated in Lloyds medical records that Lloyd has mental illness

522. John Allen gaslit Lloyd as a direct result of this misread in brain mRI

523. Gaslighting is a medical phenomena which occurs most likely to woman where a doctor dismisses a womans serious medical problem as mental illness

524. As a result, woman are either dead or left disabled such as Lloyd

525. John Allen, LGH and mRI groups actions rise to the level of gross negligence because even after hearing from Dr Vakili and Dr Falk that Lloyd was having a new stroke, they recklessly, maliciously, willfully and with zero regards for Lloyds life, dismissed Lloyds symptoms

526. The brain MRi was under the control of LGH, MRI group and John Allen at all times as they are educated healthcare professionals that know how to read these tests.

527. Lloyd never underwent education in knowing how to read an MRI

528. Lloyd was a vulnerable patient who presented with classic stroke symptoms of new onset headaches, new onset vision changes and new onset right sided weakness which was recklessly dismissed by John ALlen, MRI group and LGH

529. As a result, Lloyd is left with right sided weakness and decreased vision and new balance problems causing falls

530. John ALlen was even aware that during this time frame, Lloyd had increased eye pressure which was new which he also dismissed

531. John Allen knows that new onset increased eye pressure can be a sign of a stroke

532. John ALlen had all the warning signs that Lloyd was having a new stroke and had 2 other physicians gravely concerned about Lloyd

533. Instead of acting, John Allen instead chose to remain silent

534. John Allen, LGH and mRI group had a duty to Lloyd under the physician patient relationship

535. John Allen, LGH and MRI group breached that duty by ignoring severe signs of a new stroke

536. As a result, Lloyd suffered new disabilities including worsening vision and right sided weakness and new balance problems with falls

537. For over 6 months, Lloyd could not use her right side normally

538. Lloyds right arm was very weak and Lloyd could barely move it

539. 'Lloyds right leg felt like a weight was tied to it all the time

540. Lloyd was having severe onset new exertional headaches in one spot on left back part of her head

541. Lloyd was having new flashing lights in front of her eyes even when her eyes were closed

542. Despite knowing all of this, John Allen, LGH and MRI group completely dismissed Lloyd leading Lloyd to suffer a new brain stem medulla stroke and new onset seizures as per Dr Vakili

543. The medulla is a vital part of the brain stem that controls breathing, heart rate, blood pressure, etc

544. Since this new medulla stroke, Lloyd is having severe daily arrhythmias.

545. In fact, Lloyd recently wore a heart monitor and Lloyd had rapid arrhythmias 14 out of 14 days

546. The medulla also controls balance and Lloyd has had several falls since this new stroke and is easily getting vertigo

547. These injuries are a direct result of LGH, John Allen and MRI group dismissing a new stroke in Lloyd

548. Instead of treating lloyd like a stroke patient and answering urgent calls from other physicians who were

gravely concerned for Lloyd, John Allen spent his time
writing that Lloyd has a mental illness

As a direct result, Lloyd suffered new disabilities of
vision changes, new onset right sided weakness, increased
vertigo, loss of balance and falls, actual damages,
emotional distress, court costs, attorneys fees and
whatever damage this court sees fit

VI. VICARIOUS LIABILITY AND DIRECT LIABILITY AND OSTENSIBLE
AGENCY AGAINST LGH AND MRI GROUP
Lloyd incorporates 1-548 above and includes but not limited
to the following

549.  Lloyds damages were caused by an employee of Defendant
acting within the course and scope of his or her
employment.

550. Lloyd and Defendants had an established patient physician
relationship so they had a duty to speak and instead chose
to remain silent.

551. Defendants are liable for the negligent acts of the rest
of the Defendants as they injured Lloyd during the course
and scope of their employment by allowing Lloyd to be
dismissed during a stroke and then allowed John ALlen to
defame Lloyd in Lloyds medical record

552. They also then concealed Lloyds true diagnosis of a new stroke and then treated Lloyd like a criminal  to cover up negligence.

553. Defendants are directly liable for Lloyds injuries.

554. .Defendants are held liable for the acts of the other Defendants such as John allen  as the evidence will show that a person in Lloyds position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or(2) the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.

555. Defendants are vicariously liable for Lloyds injuries as the employees conduct is the kind they were hired to perform and the acts occurred while the other Defendants/employees were on the clock.

556. The employee actions were actuated to serve Defendant LGH and MRI group and the use of force was not unexpected by the Defendants.


As a result, Lloyd should be awarded actual damages, emotional distress, punitive damages, court costs, court fees and any other amount this court deems reasonable in excess of 100,000.00


VII. CORPORATE NEGLIGENCE AGAINST LGH

Lloyd incorporates 1-557 above and includes but not limited to the following:

557.   Corporate negligence "is a doctrine under which a hospital owes a direct duty to its patients to ensure their safety and well-being while in the hospital." Id., citing Ruff v. York Hospital, 257 A.3d 43, 49 (Pa. Super. 2021).

558. To meet a prima facie case of corporate negligence, Plaintiffs must show that the hospital acted in deviation from the standard of care, the hospital had actual or constructive notice of the defects or procedures which created the harm, and the conduct was a substantial factor in bringing about the harm. Corey, 307 A.3d at 709.

559. LGH knew Lloyds brain MRI was misread and did nothing to correct the errors

560. LGH knew that a misread in a brain MRI falls below the standards of care

561. LGH knew this misread in LLoyds brain MRI not only caused Lloyd to suffer new disabilities but also caused their employee John Allen to write false statements about Lloyd in her medical record

562. LGH knew this misread in Lloyds brain mRI caused severe injuries to Lloyd including no treatment of a new stroke.

563. A hospital is said to have constructive knowledge when it should have known of the plaintiff's condition, or when

failure to receive actual notice was caused by the absence of supervision. Id. The court reasoned that corporate negligence claims contemplate a systemic negligence on the part of the hospital. Id. at 710, citing Edwards v. Brandywine Hosp., 438 Pa. Super. 673, 652 A.2d 1382, 1386-87 (1995).

564. In March 2025, Lloyd sent LGH a certified letter stating her MRI was misread along with Dr Vakilis office notes and a picture of Lloyds stroke on July 2024 MRI

565. This informations shows the Defendants deviated from the standard of care in numerous ways

566. LGH did nothing to correct these errors and did nothing to treat Lloyds new stroke

567. Despite having knowledge Lloyd suffered a new stroke, LGH, MRI group and John Allen still recklessly dismissed Lloyd

568. There is nothing in Lloyds medical records to show that John Allen, LGH or MRI group did anything at all to help Lloyd with this new stroke

569. Instead Lloyds medical records show that LGH, MRI group and John Allen completely disregarded Lloyds new stroke and John Allen was too busy writing in Lloyds medical record that Lloyd has mental illness he could not even be bothered to respond to Dr Falk from CHOP and could not be bothered

to contact Dr Vakili or anybody at LGH to discuss Lloyds
new stroke

570. In fact, John Allen could not even be bothered to contact
Lloyd about this new stroke and showed zero concerns for
Lloyds life

571. LGH is responsible for the actions of John Allen

572. LGH complete disregard for Lloyds new stroke caused Lloyd
her injuries

Therefore, Lloyd should be awarded in excess of 100,000.00
for actual damages, emotional distress, punitive, attorneys
fees, court costs and any other costs this court sees fit


VII.  INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS AGAINST LGH AND JOHN ALLEN

Lloyd incorporates 1-572 above and includes but not limited
to the following:

573. Before Lloyd had a stroke in 2006, she was an employee at
Hahnemann Hospital in Philadelphia, PA in the acute heart
failure floor after working in the ER as a paramedic

574. Lloyd became an RN to change someones life and to make
sure another child does not go through what lloyd went
through

575. A doctor killed Lloyds brother on August 8 1983 when Joey
was 11

576. Lloyd was 8

577. Lloyd became an RN and a paramedic for the sole purpose
to help others and was very good at her job with many
praises for her help with patient care

578. Lloyd received at least 4 certificates and letters from
Hahnemann of the excellent quality of a paramedic and RN
Lloyd was, always treating patients the way Lloyd wanted to
be treated herself

579. Lloyd even volunteered at Cleveland Clinic in the
surgical waiting area to give back to them for helping
Lloyd try to overcome her health obstacles and for coming
up with many diagnosis of Lloyd which explained Lloyds
medical symptoms (none of which were mental)

580. That is who LLoyd is.  A caring, kind individual who
works her ass off at overcoming her health challenges.

581. And John Allen prior to him flipping on Lloyd knew this
as John Allen knew Lloyd did not sit on her ass but instead
begged to go to physical therapy, got off a mobility
scooter, got off of oxygen and lost 50 pounds.

582. Lloyd is a person who desires a much better life and the
only way to do that is to overcome her health challenges.

583. Unfortunately, Lloyd did not have the same experience
with LGH and John Allen

584. It is absolutely egregious the amount of hatred, disrespect and complete disregard for her life that John Allen and LGH has shown towards Lloyd when all Lloyd was trying to do is overcome her health goals so she could work as an RN again, possibly at LGH

585. But instead LGH and John Allen have turned Lloyd into a criminal and all they have done is defamed Lloyd for absolutely no reason at all

586. As healthcare professionals, they have fell well below what is expected of someone who is responsible for the lives of others

587. What John Allen did to Lloyd is called gaslighting and this is why many woman in the United States die.   There have been many articles written about it including the following which highlights how dangerous gaslighting truly is "An Open Letter to the Doctors/Professionals Who Dismiss Us

To the ones who laugh, roll their eyes, don't listen or talk over us…

We come to you because we're hurting. Because we're scared. Because we've exhausted every other option and still don't have answers. And instead of care, we're met with

condescension. Instead of curiosity, we're met with mockery.

You may be used to patients who comply, who keep quiet, who don't question what you've been taught. But that doesn't make your narrow view the truth.

The medical system is failing people like me—like us—because too many providers cling to outdated beliefs and ignore lived experience. Because they mock what they do not understand.

And here's the hardest part: people will read this and think I'm being emotional or overreacting.

But that is the problem.

We've normalized cruelty in medicine and labeled it "professionalism." We've turned clinical into a synonym for cold. And we wonder why so many people stop seeking help.

You didn't just dismiss a symptom.

You dismissed a person—a person who has fought for their life. A person who deserves respect, even if their experience challenges your training. A person who will not stop speaking up—for themselves, and for every other patient you've made feel small.

How dare you.

How dare you mock people for speaking up about their own
bodies. How dare you treat complexity as an inconvenience.
How dare you weaponize your education against the very
people it was meant to serve.

This isn't about one appointment. It's about a culture of
medical gaslighting that has gone unchecked for too long.
It's about the patients who leave in tears, questioning
their sanity, when they should've left with support. It's
about dignity.

So to every doctor reading this: if you cannot hold space
for the possibility that your patient knows something you
don't, you are not practicing medicine. You are practicing
ego.

And people are paying the price.

Shame on you for forgetting your oath.

Sincerely,

Shannon Lee and

Everyone Else Who Deserved Better

588. What John Allen and LGH did to Lloyd is deplorable and
outrageous and beyond all human decency and for that LLoyd
should be awarded the highest amount allowed under the law

to prevent them from ever treating another patient the same way.

589. LGH and John Allen knew that treating Lloyd like a criminal could potentially destroy Lloyds chances of ever working again as an RN as a criminal record bars a health care provider from practicing medicine

590. John Allen and LGH treated Lloyd like a criminal for the sole purpose to get out of legal trouble as Lloyd called them out for misdiagnosing a stroke and then defaming Lloyd in her legal medical record

591. This went beyond all human decency and was so egregious, there is no words to even begin to explain their actions.

592. LGH and John Allens conduct of calling Lloyd a criminal was outrageous, reckless and beyond all decency

593. John Allen was a green beret in the United States Army and has all types of military training including sharp shooter, hand to hand combat, etc- training that Lloyd has never received

594. John Allen even posts pictures of himself on social media dressed in his army uniform surrounded by guns

595. John Allen even came to one of Lloyds appointments with a cast on his arm.

596. When Lloyd asked him what he did, he screamed so loud the entire office most likely heard him when he said "he smashed it"

597. John Allen also lost his temper on Lloyd for no reason because she had a cardiac cath done in Ohio at the direction of her old cardiology group in Ravenna, Ohio

598. John Allen also lost his temper on Lloyd in a my chart message all because Lloyd was trying to inform him that her blood sugar dropped very low right after she left his office and John Allen gave Lloyd the wrong dexcom code.

599. It appears to Lloyd that John Allen may be suffering some type of mental distress due to his anger outbursts, which caused him to unlawfully lash out at Lloyd for no just cause and then fabricate stories about Lloyd to get out of legal trouble

600. It is clear that John Allen telling LGH he is afraid of Lloyd was done for an unlawful purpose to get out of legal trouble and not because he has any fear whatsoever of his safety due to Lloyd

601. LGH and John Allens conduct of recklessly dismissing new onset stroke was outrageous, reckless and beyond all decency

602. John Allen and LGH intended to cause Lloyd emotional distress or was willfully blind to the possibility of Lloyd suffering emotional distress due to their conduct

603. John Allen and LGH calling LLoyd a criminal and ignoring a stroke caused Lloyd emotional distress and they knew it would

604. John Allen and LGH are creating an image in their minds that Lloyd was harassing and/or stalking John Allen

605. It is insulting at best and egregious for John Allen and LGH to make false stalking and harassment accusations about Lloyd

606. Lloyd herself is a true victim of stalking by Patrick Joseph Edgington , an ex neighbor of Lloyds, who would walk by Lloyds apartment in the middle of the night, go onto Lloyds patio and look into Lloyds windows

607. Lloyd, unlike John Allen, made police reports and have video of true stalking directed towards Lloyd

608. Lloyd also has facebook posts where her ex neighbor Joshua Thornsbery in Streetsboro Ohio admits to getting over 500 of his facebook friends to threaten to rape Lloyd, murder Lloyd, blow up Lloyds house etc all because Lloyd reported him to the authorities for illegal fires and a loose pit bull that chased Lloyd on her own property and shit all over Lloyds yard.

609. The record shows Lloyd made multiple police reports to Streetsboro Ohio police and even hired a lawyer to try to get a protection order against Josh.

610. So it is outrageous that John Allen and LGH would falsely accuse Lloyd of criminal activity

611. John Allen has no idea what it truly feels like to be a stalking victim and a victim of a crime and how devastating the impact is

612. When Patrick looked into Lloyds windows at 5 am, Lloyd was up for over 3 days straight fearing for her life

613. When Lloyd found Joshs facebook page dedicated to her, Lloyd barely slept for weeks and stayed up all night watching her security cameras for months on end

614. That is what a true stalking victim does

615. It is despicable and shows the amount of hatred that John Allen and LGH has towards Lloyd for them to create such a fictional disgusting and deplorable scenario to make it seem as if John Allen is a crime victim and Lloyd is the perpetrator

616. Lloyds emotional distress and mental anguish at being dismissed when she was showing classic stroke symptoms and then being called a criminal by John Allen and LGH when she sent a demand letter to them was severe and ongoing to date

617. LGH and JOhn Allen are healthcare professionals and their actions go outside all societal standards for healthcare professionals

618. A normal hospital would not have dismissed a new stroke and in fact both Dartmouth and CHOP informed John Allen and LGH of their grave concerns for Lloyds health

619. LGH and John Allen dismissed Lloyds new stroke anyways and despite having Dr Vakilis office notes, John Allen to date still has in Lloyds medical record that Lloyd never had any strokes despite Dr Vakili stating Lloyd has had TWO strokes

620. LGH and John Allen then began to treat Lloyd as if she was a criminal even getting security involved for the nefarious purpose to get out of legal trouble

621. Lloyd asserts she has never done anything criminally wrong to John ALlen or anybody else at LGH for that matter

622. As a direct result of being treated like a criminal by both LGh and John Allen, Lloyd has terminated her care from all of the LGH system including her weight loss doctor and her cardiologist which Lloyd has seen for about 5 years

623. John Allen and LGh knew when they called Lloyd a criminal that they would induce severe emotional distress in lloyd

624. John Allen and LGH knew when they dismissed a new onset stroke that they would induce severe emotional distress in Lloyd

625. Despite knowing that Lloyd has no mental illness, John Allen refuses to remove his false statements from Lloyds medical record knowing his conduct would cause Lloyd severe emotional distress

626. Despite knowing that Lloyd has a new stroke, John Allen and LGH refused to amend Lloyds medical record to reflect accurate information

627. Under HIPPA, John Allen and LGH are required to have accurate information in Lloyds medical records

628. John Allens callousness towards Lloyd is reflected in his actions of treating Lloyd like a criminal and his statement "I have said what I have said" when Lloyd asked him to amend her medical records

629. LGH callousness towards Lloyd is reflected in their actions of treating Lloyd like a criminal when Lloyd asked them to amend her MRI report and to delete John Allens false statements and for a monetary demand of the injuries they caused Lloyd.

LGH and John Allen intentionally with complete reckless disregard to Lloyd, which goes outside of all societal norms for healthcare professionals caused Lloyd severe emotional distress

As a result lLoyd should be awarded actual damages, punitive, emotional distress, attorneys fees and court costs in excess of 100,000.00


VIII. RICO VIOLATIONS AGAINST JOHN ALLEN AND LGH

LLoyd incorporates 1-629 above and includes but not limited to the following:

630. John Allen and LGH schemed to defraud Medicare and Lloyd out of money by having John Allen send Lloyd to numerous specialists and tests

631. As per John Allen, all of these specialists and tests were unnecessary and yet he is the one who referred Lloyd for all of them

632. It appears that LGH, who trained John Allen for residency, has taught John Allen how to make as much money as possible for himself and LGH by committing fraud and referring people for unnecessary specialists and tests

633. In fact LGH has a history of defrauding the government and has had other lawsuits as a direct result similar to Lloyds claims and has had to pay at least 275,000.00 in fines as a direct result

634. John Allen knew when he referred Lloyd to all of these specialists and all of these tests that she had no desire to go

635. When Lloyd resisted, John Allen would continue to remind Lloyd at each visit that he wanted her to undergo all of these specialists and tests which as per his own words in March 2025 were unnecessary

636. Prior to seeing John ALlen, Lloyd has not seen any of these specialist for at least 5 years and did not feel the need to continue to see any of them on a routine basis

637. LGH has a history, evidenced by other cases and fines against them, for fraud and unnecessary billing

638. LGH and John Allen and other unknown third parties have conspired to participate in an enterprise to collect unlawful funds from unnecessary referrals and tests

639. Under RICO, LGH and John Allen can be an enterprise as they are a corporation and an individual

640. LGH has a history of fraudulent activity dating back at least 7 years and in fact have paid a 275,000.00 fine as a result of submitting false claims to medicaid

641. LGH has also been sued for rico previously in St Lukes v LGH, PAED 5:18-cv-02157 where LGH was accused of taking 12 million more dollars than it was deserved from the Tobacco Settlement Funds

642. 1-617 above shows that LGH has a long history of
committing fraud for financial gain and has trained John
Allen during residency to continue this pattern of fraud


As a result lLoyd should be awarded actual damages, punitive,
emotional distress, attorneys fees and court costs in excess of
100,000.00


DAMAGES THAT SHOULD BE AWARDED TO LLOYD

1. Actual

2. Punitive

3. Emotional distress

4. Court costs

5. Attorneys fees

6. Damages in excess of 100,000.00

Susan lloyd

/s/ susan lloyd

55 stanley ave

Landisville, PA 17538

New case

Lloyd is calling on Nov. 17 2025 to
pay fee with credit card.

If don't accept credit card, Lloyd is

Mailing in fee on Nov. 17, 2025

Susan Lloyd

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff *Lancaster*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant *Lancaster*
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* 2133219994
Susan Lloyd 55 Stanley Ave Carlisle PA 17538

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>151 Medicare Act<br>152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholders' Suits<br>190 Other Contract<br>195 Contract Product Liability<br>196 Franchise | **PERSONAL INJURY**<br>310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers' Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Personal Injury - Medical Malpractice | 625 Drug Related Seizure of Property 21 USC 881<br>690 Other | 422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>820 Copyrights<br>830 Patent<br>835 Patent - Abbreviated New Drug Application<br>840 Trademark<br>880 Defend Trade Secrets Act of 2016 | 375 False Claims Act<br>376 Qui Tam (31 USC 3729(a))<br>400 State Reapportionment<br>410 Antitrust<br>430 Banks and Banking<br>450 Commerce<br>460 Deportation<br>470 Racketeer Influenced and Corrupt Organizations<br>480 Consumer Credit (15 USC 1681 or 1692)<br>485 Telephone Consumer Protection Act<br>490 Cable/Sat TV |
| | **PERSONAL INJURY**<br>365 Personal Injury - Product Liability<br>367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **LABOR**<br>710 Fair Labor Standards Act<br>720 Labor/Management Relations<br>740 Railway Labor Act<br>751 Family and Medical Leave Act<br>790 Other Labor Litigation<br>791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>861 HIA (1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g))<br>864 SSID Title XVI<br>865 RSI (405(g)) | 850 Securities/Commodities/ Exchange<br>890 Other Statutory Actions<br>891 Agricultural Acts<br>893 Environmental Matters<br>895 Freedom of Information Act<br>896 Arbitration<br>899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property | **CIVIL RIGHTS**<br>440 Other Civil Rights<br>441 Voting<br>442 Employment<br>443 Housing/ Accommodations<br>445 Amer. w/Disabilities - Employment<br>446 Amer. w/Disabilities - Other<br>448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>463 Alien Detainee<br>510 Motions to Vacate Sentence<br>530 General<br>535 Death Penalty<br>**Other:**<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br>560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>870 Taxes (U.S. Plaintiff or Defendant)<br>871 IRS—Third Party 26 USC 7609<br>**IMMIGRATION**<br>462 Naturalization Application<br>465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
RICO, Fraud, Sex and Disability Discrimination, False Claims Act, Qui Tam

Brief description of cause: Defendants have a history of committing fraud and committed fraud of Lloyd

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ Greater than 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):* NONE

JUDGE _____ DOCKET NUMBER _____

DATE 11/6/25

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

Susan Lloyd )
_____ )
Plaintiff )
John Allen )   Civil Action No.
_____ )
Defendant )

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: John Allen

(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within *30* days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 11/16/25

_____
Signature of the attorney or unrepresented party

Susan Lloyd
Printed name

55 Stanley Ave Landisville PA 17538
Address

domino7575@yahoo.com
E-mail address

213 321 9999
Telephone number

Please serve Lloyd via email domino7575@yahoo.com

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

Susan Lloyd
_____
Plaintiff

John Allen v.
_____
Defendant

)
)
)
)
)

Civil Action No.

### WAIVER OF THE SERVICE OF SUMMONS

To: Susan Lloyd
_____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 11/16/25_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____          _____
*Printed name of party waiving service of summons*          *Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

Susan Lloyd
_____
Plaintiff
v.
Lancaster General Hospital
_____
Defendant

)
)
)
)
)

Civil Action No. _____

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Lancaster General Hospital
(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 30 days (give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 11/16/25

_____
Signature of the attorney or unrepresented party

Susan Lloyd
_____
Printed name

55 Stony Ave Lamksville PA
domino 7575 @ yahoo, com 7538
_____
Address

domino 7575 @ yahoo, com
_____
E-mail address

2133219944
_____
Telephone number

Please serve
Lloyd via
email
Domino 7575 @
Yahoo. com

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

Susan Lloyd

_Plaintiff_

)
)

Lancaster General Hospital

_Defendant_

)
)
)

Civil Action No.

## WAIVER OF THE SERVICE OF SUMMONS

To: Susan Lloyd

_(Name of the plaintiff's attorney or unrepresented plaintiff)_

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _11/16/25_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
_Printed name of party waiving service of summons_

_____
_Signature of the attorney or unrepresented party_

_____
_Printed name_

_____
_Address_

_____
_E-mail address_

_____
_Telephone number_

---

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does _not_ include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

Susan Lloyd )
_Plaintiff_ )
v. )    Civil Action No.
MRI Group LLP )
_Defendant_ )

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: MRI Group LLP

_(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)_

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 30 days _(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)_ from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 11/16/25

_____
_Signature of the attorney or unrepresented party_

Susan Lloyd
_Printed name_

55 Stanley Ave Landisville PA 17538
_Address_

Domino 7575 @ yahoo.com
_E-mail address_

213 321 9999
_Telephone number_

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

Susan Lloyd
_____
Plaintiff
)
)
)

v.

MRI Group LLP
_____
Defendant
)
)

Civil Action No. _____

## WAIVER OF THE SERVICE OF SUMMONS

To: ___Susan Lloyd_____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from ___11/6/25_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
Signature of the attorney or unrepresented party

_____
*Printed name of party waiving service of summons*

_____
Printed name

_____
Address

_____
E-mail address

_____
Telephone number

---

### Duty to Avoid Unnecessary Expenses of Serving a Summons

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Susan Lloyd

_____
<em>Plaintiff(s)</em>

v.

MRI Group LLP

_____
<em>Defendant(s)</em>

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

MRI Group LLP
941 Wheatland Ave Ste 100
Lancaster PA 17603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 11/16/25  _____

_____
<em>Signature of Clerk or Deputy Clerk</em>

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

|  |  |  |
|---|---|---|
| Susan Lloyd | ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No. |
| Lancaster General Hospital | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_     Lancaster General Hospital
555 N. Duke St
Lancaster PA 17603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: 11/16/25

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

|  |  |
|---|---|
| Susan Lloyd | ) |
| _Plaintiff(s)_ | ) ) ) |
| v. | ) ) |
| John Allen | ) ) ) ) |
| _Defendant(s)_ | ) |

Civil Action No.

### SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_    John Allen
505 Historic Dr.
Strasburg, PA 17579

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:  11/16/25

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: