**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN LLOYD,<br>Plaintiff,<br><br>v.<br><br>LANCASTER GENERAL HOSPITAL and<br>MRI GROUP, LLP,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 5:25-cv-06494-JLS |

**MEMORANDUM**

**SCHMEHL, J. - */s/ JLS*** **SEPTEMBER 16, 2026**

Susan Lloyd filed a pro se lawsuit against Lancaster General Hospital and MRI Group LLP, claiming they engaged in fraud, sex and disability discrimination, and a litany of other offenses.[1] There are numerous matters pending before the Court, including the hospital's motion to dismiss, Dkt. No. 109, and MRI Group's motion to dismiss, Dkt. No. 105. Lloyd has opposed both motions to dismiss. *See* Dkt. Nos. 106, 112.

## I. BACKGROUND

In her complaint, Susan Lloyd complains of illegal conduct stemming from visits to Lancaster General Hospital and a brain MRI she received from MRI Group LLP. Compl. ¶¶ 14–46. She claims MRI Group's MRI was misread, and the hospital misdiagnosed her, continuing a "history of misreading tests and even brain MRI[s]." Compl. ¶¶ 17, 19, 22. The misdiagnosis caused

[1] The Court will treat Lloyd's second amended complaint, Dkt. No. 102, as the operative complaint. Because that complaint names only Lancaster General Hospital and MRI Group as defendants and because Lloyd moved to dismiss John Allen as a defendant, Dkt. No. 99, Allen will be dismissed with prejudice and terminated as a defendant.

"Lloyd permanent deficits including vision loss, right sided weakness, balance problems, falls and other neurological deficits." Compl. ¶ 33. She details past instances of the hospital misdiagnosing her, leading her to seek alternative facilities to obtain correct diagnoses. Compl. ¶¶ 37–45. She also claims that the hospital "falsely accused" her of stalking and harassing her primary care physician. Compl. ¶ 27.

Lloyd included nine counts, claiming multiple federal and state claims. Construed liberally, Lloyd raised three federal claims: disability discrimination, Compl. ¶¶ 256–324; sex discrimination, Compl. ¶¶ 256–324; and HIPAA violations, Compl. ¶¶ 58, 82, 125, 132, 174, 306, 406, 509–10, 716, 719.[2] She raised multiple state claims, including fraud and/or fraudulent concealment, Compl. ¶¶ 47–255; defamation per se, Compl. ¶¶ 325–77; res ipsa loquitor and/or negligence and gross negligence, Compl. ¶¶ 378–618; breach of fiduciary duty and respondeat superior, Compl. ¶¶ 619–30; vicarious liability and direct liability and ostensible agency, Compl. ¶¶ 631–40; corporate negligence, Compl. ¶¶ 641–61; intentional and/or negligent infliction of emotional distress, Compl. ¶¶ 662–723; and abuse of process, Compl. ¶¶ 724–801. All parties are considered Pennsylvania residents, so Lloyd relies on federal question jurisdiction and civil-rights jurisdiction. Compl. ¶ 8.

MRI Group and the hospital moved to dismiss. Dkt. Nos. 105, 109. MRI Group argued Lloyd cannot establish federal question jurisdiction over MRI Group, and this Court thus lacks subject matter jurisdiction. Mem. 6, Dkt. No. 105. The hospital, incorporating its previous motion to dismiss, Dkt. No. 50, argued Lloyd failed to state a plausible claim. Mem. 2, Dkt. No. 109.

[2] Lloyd's first amended complaint raised a False Claims Act claim and a civil RICO claim. First Am. Compl. ¶¶ 683–801 (False Claims Act); 1260–71 (Civil RICO), Dkt. No. 41. Lloyd omitted those claims in her second amended complaint, *see* Dkt. No. 102, so the Court will ignore them.

Lloyd opposed both motions, claiming this Court has supplemental jurisdiction over her claims against MRI Group, Resp. 2, Dkt. No. 106, and that she has properly raised a federal claim, Resp. 1–3, Dkt. No. 112; *see also* Mot. 3–8, Dkt. No. 53.

## II. LEGAL STANDARD

Three legal standards govern this Court's review. First, under Rule 12(b)(1), a claim may be dismissed for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion can either be facial or factual. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack accepts the complaint's allegations and argues they are insufficient to invoke jurisdiction. *Id.* at 358. A factual attack allows courts to look beyond the pleadings to determine whether the case's facts support jurisdiction. *Id.* Because MRI Group filed its Rule 12(b)(1) motion before filing an answer and without any competing facts, its attack is facial. *See id.* A facial attack requires the Court to construe allegations in favor of Lloyd, the nonmoving party. *See id.*

Second, under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* at 678–79. A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Because Lloyd is proceeding pro se, the Court construes her allegations liberally, "apply[ing] the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir.

2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). But pro se litigants still need to allege sufficient facts in their complaints. *Id.* (quoting *Mala*, 704 F.3d at 245).

Third, under Rule 11, courts evaluate when conduct allegedly violating the rule is reasonable under the circumstances. *Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988). Before filing a Rule 11 motion, parties must comply with the rule's 21-day safe-harbor provision. *See* Fed. R. Civ. P. 11(c)(2).

## III. DISCUSSION

### A. MRI Group's motion to dismiss

MRI Group argued that this Court lacks subject matter jurisdiction over each of Lloyd's pleaded claims against it "because no relevant civil cause of action exists under federal law." Mem. 6, Dkt. No. 105. MRI Group is factually correct. In her second amended complaint, Lloyd limits her federal claims to being only against the hospital. *See generally* Compl. But courts can entertain state claims, like those asserted against MRI Group, if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). As Lloyd pointed out, this Court could have "supplemental jurisdiction" over the state claims against MRI Group. Opp'n 2, Dkt. No. 106. To exercise supplemental jurisdiction, however, there must be a jurisdiction-invoking claim. The Court will thus move to the hospital's motion to dismiss. If Lloyd failed to state a plausible federal claim, then the complaint would lack a jurisdiction-invoking claim.

**B. Lancaster General Hospital's motion to dismiss**

**1. Federal claims**

**a. ADA claims**

In her complaint, Lloyd asserts that the hospital discriminated against her based on her disability, violating federal discrimination laws. *See* Compl. ¶¶ 256–324. In general, "Lloyd was subjected to severe, offensive, and deeply harmful discrimination and treatment because of her disability." Compl. ¶ 267. In particular, a nursing assistant said that "if Lloyd was working there, she would be in the back room taking her blood pressure all of the time." Compl. ¶ 278. And another one said that "if Lloyd continues to come to the office as often as she does then John Allen is going to think that Lloyd likes him and then she laughed and said 'I love my job.'" Compl. ¶ 279. Lloyd seeks compensatory damages, punitive damages, and all appropriate injunctive and equitable relief. Compl. ¶ 288.

Lloyd fails to identify which federal discrimination laws the hospital violated. Construed liberally, however, the Court understands her to be asserting a Title III ADA claim, which prohibits a hospital from discriminating against a person who is disabled. 42 U.S.C. § 12181; *see also Evans v. President of Thomas Jefferson Univ. Hosp.*, No. 22-cv-1371, 2022 WL 2916685, at *3 (E.D. Pa. July 25, 2022). The Court therefore dismisses with prejudice her claim for monetary damages because "Title III defendants cannot be liable for money damages." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 433 (3d Cir. 2003).

That leaves her claim for injunctive and equitable relief. The Court will dismiss these claims without prejudice because Lloyd lacks standing to assert them. A Title III plaintiff "lacks standing to seek injunctive relief unless [s]he alleges facts giving rise to an inference that [s]he will suffer future discrimination by the defendant." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288

F.3d 548, 561 (3d Cir. 2002) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). Lloyd's complaint does not give rise to that inference. In fact, it implies the opposite: she "terminated all of her care from LGH" and "the LGH system." Compl. ¶¶ 106, 351, 372, 712. She has instead gone to Penn State, Patient First, and Dartmouth to receive medical care. Compl. ¶¶ 42–45. She argues that the hospital told her that "if she comes back to LGH, she will be arrested." Opp'n 25, Dkt. No. 53. But her complaint lacks any inference that, absent this purported threat, she would return to the hospital or restart her care with the hospital. Because there is nothing in her complaint that implies she will visit the hospital again, her claim is dismissed without prejudice. *See Cook v. GameStop, Inc.*, 148 F.4th 153, 163 (3d Cir. 2025).

**b. Sex discrimination claims**

Lloyd asserts that the hospital discriminated against her based on her sex, violating federal discrimination laws. *See* Compl. ¶¶ 256–324. She neglects to include the specific federal discrimination laws she believes the hospital has violated. But in her opposition to the hospital's motion to dismiss her first amended complaint, she argues that she has stated a claim for a violation of the Affordable Care Act's nondiscrimination provision. Opp'n 31. That provision prevents health programs or activities that receive federal financial assistance from discriminating based on race, color, national origin, sex, disability, or age. 42 U.S.C. § 18116(a). For sex, it incorporates the enforcement mechanism from Title IX of the Education Amendments of 1972. 42 U.S.C. § 18116(a). Title IX requires a plaintiff to allege facts showing intentional sex discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

Lloyd has failed to do that. Stripped of its conclusory allegations, the complaint describes two instances of alleged discrimination: a nursing assistant talking about Lloyd working there, Compl. ¶ 278, and a different nursing assistant talking about Lloyd's doctor thinking that she likes

him, Compl. ¶ 279. Lloyd calls these incidents "egregious examples," but she provides few allegations of other misconduct. And her discrimination allegations seem mostly motivated by those two incidents. *See, e.g.*, Compl. ¶ 282 (describing "[b]eing harassed by LGH staff with inappropriate comments"); 289 (describing being "horrified to hear comments from LGH staff"); 290 (describing being unable to "understand why LGH staff would make such egregious comments about Lloyd"). The nursing assistants' statements—though Lloyd considered them rude—do not establish discriminatory intent as nothing in them shows any hostility toward sex.

The few other allegations of sex discrimination Lloyd asserts are based on being mistreated. She claims, for example, that male patients are "treated better," Compl. ¶ 272; "treated more favorably," Compl. ¶ 276; and "never falsely accuse[d] . . . of stalking," Compl. ¶ 295. These claims are conclusory, and Lloyd fails to bring forward specific facts, direct evidence, or circumstantial evidence to support her claim of sex discrimination. Lloyd has amended her complaint twice, and the Court will not give her a third chance. These claims are dismissed with prejudice.

**c. HIPAA claim**

Throughout her complaint, Lloyd claims that the hospital violated HIPAA by discussing her private medical information and concealing those discussions from her. *See, e.g.*, Compl. ¶¶ 58, 82, 125. But "HIPAA does not provide a private right of action." *Byrne v. Berks Cnty. Jail*, No. 24-1193, 2024 WL 2794446, at *1 (3d Cir. May 31, 2024) (citing *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (noting that "[e]very circuit court to consider whether HIPAA created a private right to sue has found that it does not"). Lloyd agrees, noting in her opposition that HIPAA violations "are mentioned under other causes of actions" and not "a separate cause of action." Opp'n 59–60, Dkt. No. 53. Any purported HIPAA claims will be dismissed with prejudice.

### 2. State claims

When a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise its supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (cleaned up). In fact, unless judicial economy, convenience, and fairness "provide an affirmative justification" for exercising jurisdiction, district courts "*must* decline to decide the pendent state claims." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis added). Here, judicial economy, convenience, and fairness to the litigants fail to provide an affirmative justification to exercise supplemental jurisdiction. This case has not moved past the motion to dismiss stage and is thus still in its early stages. *See Barraclough v. Animal Friends, Inc.*, No. 23-3157, 2024 WL 4867068, at *3 (3d Cir. Nov. 22, 2024) (affirming district court's refusal to exercise supplemental jurisdiction when case was in its initial stages). The state claims are therefore dismissed without prejudice. *See Kach*, 589 F.3d at 650.

### C. Remaining motions

Because the federal claims have been dismissed with prejudice and the Court declines to exercise supplemental jurisdiction over the state claims, most of the pending motions before this Court are moot. The Court will deny them as such. But there remain five motions for sanctions, which do not become moot even after the Court dismisses all the claims before it. *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992); *see also Lazorko v. Pa. Hosp.*, 237 F.3d 242, 247 (3d Cir. 2000) (noting that a court "still had jurisdiction to order sanctions" even after it dismissed "all the claims before it"). The motions for sanctions are without merit and denied.

Lloyd's first motion seeks sanctions for failure to comply with Rule 26, Dkt. No. 33 at 1, but sanctions are improper under Rule 26(g) and defendants have provided substantial justification for objecting to Lloyd's discovery requests. Lloyd's second, third, and fourth motions seek sanctions against attorney Kathleen Kirkpatrick and the hospital for "false statements," "getting involved in" personal matters, and "egregious actions." Dkt. Nos. 47, 64, 77. These motions are plainly without merit, and Lloyd has not shown that she has complied with Rule 11's 21-day safe harbor. *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024). For example, in her second motion for sanctions, Lloyd argues that Kirkpatrick should be sanctioned if she does not withdraw specific statements within 21 days. Dkt. No. 47 at 1, 29. But she does not explain whether she complied with Rule 11's requirement that she serve the motion at least 21 days before filing or presenting it to the Court. *See* Fed. R. Civ. P. 11(c)(2). Lloyd's fifth motion for spoliation sanctions for failure to produce medical records in violation of HIPAA and the HITECH Act, Dkt. No. 89, is meritless because, as explained above, HIPAA lacks an independent cause of action and therefore her motion is unrelated to any of her causes of action.

## IV. CONCLUSION

Lloyd's federal claims against Lancaster General Hospital are dismissed with prejudice, except her ADA injunctive claim, which is dismissed without prejudice. Her state claims against Lancaster General Hospital and MRI Group LLP are dismissed without prejudice. The motions for sanctions are denied. The remaining motions pending on the docket are denied as moot. An appropriate order will follow.